Argued and submitted February 9, affirmed April 13, petition for review denied October 20, 2016 (360 Or 465)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## KENNETH HAROLD KAUPPI,
*Defendant-Appellant.*

Clatsop County Circuit Court
137107; A156511

371 P3d 1264

Kevin T. Lafky argued the cause for appellant. With him on the opening brief was Lafky & Lafky. With him on the reply brief were Leslie D. Howell and Lafky & Lafky.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

LAGESEN, J.

**LAGESEN, J.**

Defendant was arrested and then convicted pursuant to a conditional guilty plea of Driving Under the Influence of Intoxicants (DUII), ORS 813.010. When defendant refused to consent to a breath test after he was arrested, the arresting officer obtained a telephonic warrant to take two blood samples from him and then executed that warrant. The warrant did not state defendant's name correctly, identifying defendant by the wrong first and middle names. The issue on appeal that we write to address is whether the incorrect statement of defendant's name rendered the warrant in violation of the particularity requirement of the warrant clause of Article I, section 9, of the Oregon Constitution[1] and ORS 133.565,[2] so as to require the suppression of the blood samples obtained pursuant to that warrant. We conclude, as did the trial court, that the answer to that question is no. We reject defendant's other five assignments of error without written discussion and, therefore, affirm the judgment of the trial court.

## BACKGROUND

The trial court made detailed written factual findings, which defendant has not challenged on appeal. Accordingly, we draw the statement of the facts from the trial court's findings, which are supported by constitutionally sufficient evidence in the record.

Defendant was initially pulled over by Sergeant Knight for unlawful sound amplification and making an unsignaled turn. Knight later testified that defendant appeared lethargic, had bloodshot, watery eyes, and smelled of alcohol. Knight believed that defendant might have committed the crime of DUII because he appeared to be impaired

---

[1] Article I, section 9, of the Oregon Constitution provides, in part, that "no warrant shall issue but upon probable cause, * * * and particularly describing the place to be searched, and the person or thing to be seized."

[2] ORS 133.565(2)(b) provides, in relevant part:

"(2) The warrant shall state, or describe with particularity:

"* * * * *

"(b) The name of the person to be searched, or the location and designation of the premises or places to be searched[.]"

and under the influence of alcohol. Knight then contacted Officer Shimer, who was also working that evening, to investigate whether defendant had been driving while impaired. Shimer asked defendant to perform field sobriety tests, but defendant refused. After conversing with defendant for a few minutes, Shimer believed that he had probable cause to arrest defendant for DUII. Shimer read defendant the *Rohrs* admonishment,[3] and defendant again refused to take the tests. Shimer brought defendant to the police station, where defendant refused to undergo a breath test.

After defendant refused to take a breath test, Shimer decided to apply for a telephonic search warrant to obtain two blood samples, or breath samples, to determine defendant's blood alcohol content (BAC). Shimer completed an affidavit and called a local circuit court judge to obtain approval for the warrant. After listening to Shimer's recitation of the facts supporting a probable cause determination, the judge approved the search warrant and authorized Shimer to place the judge's signature on the search warrant at 11:15 p.m.

When recounting the facts pertinent to the probable cause determination, Shimer initially identified defendant by the correct full name and date of birth. About halfway through the conversation, however, Shimer began mistakenly using an incorrect first and middle name to identify defendant, calling him "Michael James Kauppi," instead of his correct name, "Kenneth Harold Kauppi." When Shimer read the warrant—which referred to Michael James Kauppi—Shimer recognized that he had used the incorrect first and middle names for defendant, and he told the judge that he would "need to change" the name reference.

Shimer's written affidavit in support of the warrant application also used the wrong first and middle names to refer to defendant in some places. Although the affidavit referred to defendant by the correct last name and date of birth, in one place it identified defendant as "Kennith Harold

---

[3] The *Rohrs* admonishment is a warning that refusal to submit to physical tests can be used against a defendant in court. *State v. Rohrs*, 157 Or App 494, 499, 970 P2d 262 (1998), *aff'd*, 333 Or 397 (2002).

Kauppi" and in another place identified him as "Michael James Kauppi." Finally, as noted, defendant's last name and date of birth are correct in the search warrant, but defendant's first and middle names are incorrect.

After obtaining the judge's approval of the warrant, Shimer went to defendant's holding cell and read the warrant word-for-word to defendant. Shimer again asked defendant to take a breath test. When defendant refused, Shimer contacted a medical service to conduct the blood draw. The blood test results indicated that defendant had a 0.148 BAC at the time of the blood draw.

Defendant filed multiple motions to suppress before trial, including a motion to suppress evidence of the results of the blood test. Defendant argued that the use of erroneous first and middle names in the warrant rendered the warrant insufficiently particular and, therefore, invalid. The trial court denied defendant's motions. Defendant conditionally pleaded guilty to one count of DUII, reserving the right to appeal the trial court's rulings on his motions to suppress.

On appeal, defendant argues that the warrant in this case was not sufficiently particular to satisfy the requirements of Article I, section 9, and ORS 133.565(2)(b). The state responds that the trial court correctly denied defendant's motion to suppress because an officer could determine, with reasonable effort, the person who was the subject of the search warrant and, therefore, the warrant was sufficiently particular. We review the trial court's denial of a motion to suppress for legal error and are bound by the trial court's findings of historical facts that are supported by constitutionally sufficient evidence in the record. *State v. Bailey*, 356 Or 486, 489, 338 P3d 702 (2014).

The issue on appeal is whether the warrant, notwithstanding the incorrect statement of defendant's first and middle names, satisfied the particularity requirements of ORS 133.565(2)(b) and the warrant clause of Article I, section 9. Although, as a general matter, we resolve statutory issues before reaching constitutional issues, we have held that, with regard to the particularity requirements of both Article I, section 9, and ORS 133.565(2), the issues merge,

and our review under both provisions is the same. *See State v. Carter*, 200 Or App 262, 266, 113 P3d 969 (2005) (so stating); *see also State v. Edwards*, 149 Or App 702, 707, 945 P2d 553, *rev den*, 326 Or 234 (1997) (treating the statutory and constitutional particularity requirements as coextensive); *State v. Ingram*, 313 Or 139, 143, 831 P2d 674 (1992) (construing ORS 133.565(2)(b) to be "at least as restrictive as the constitutional prohibition against general warrants").

Article I, section 9, requires that a warrant authorizing a search "particularly describ[e] the place to be searched." Here, the "place" to be searched was defendant, making the question for us whether the warrant sufficiently described defendant so as to comport with Article I, section 9's particularity requirement. As the Supreme Court has told us, "[a] description in a warrant of the place to be searched satisfies the particularity requirement if it permits the executing officer to locate with reasonable effort the premises to be searched." *State v. Trax*, 335 Or 597, 603, 75 P3d 440 (2003) (internal quotation marks omitted). That is so even if the description in the warrant contains mistakes. The question is always whether the description in the warrant, notwithstanding the mistakes and together with reasonable efforts made by the executing officer to identify the premises, or person, to be searched, permitted the officer to determine the place, or person, to be searched. *State v. McDowell*, 211 Or App 341, 347, 155 P3d 877 (2007) (citing *Trax*, 335 Or at 609).

In this context, a "reasonable effort" to locate the place for which the warrant authorizes the search means "*minimal* police effort in conjunction with the warrant, as opposed to extensive effort." *Trax*, 335 Or at 609 n 8 (emphasis added). Thus, for example, in *Trax*, the Supreme Court concluded that the warrant at issue satisfied the Article I, section 9, particularity requirement with respect to the defendants' residence, which was located in a multi-residence building, even though the warrant did not, on its face, identify which particular unit belonged to the defendants. The court explained that, notwithstanding the omission of that information, the description in the warrant was sufficient because, in addition to specifying the address of the building, it identified the specific people who were the target

of the search and the executing officers, by asking questions upon their arrival at the address, were able to ascertain which of the residential units located at the address in the warrant belonged to the defendants. *Id.* at 609-10.

In discussing the types of minimal "reasonable effort" that an officer permissibly might make in order to clarify an ambiguity in a warrant as to the place to be searched, the court stated that an executing officer permissibly may draw upon that officer's personal knowledge, as well as information obtained through additional, "minimal" reasonable efforts, regarding the proper location of the search. *Id.* at 609 n 8. Specifically, the court noted that, in *State v. Cortman*, 251 Or 566, 569-70, 446 P2d 681 (1968), *cert den*, 394 US 951 (1969), it had determined that the executing "officer permissibly utilized personal knowledge, independent of the wording of the warrant, concerning the location of defendant's apartment within a multi-unit building, rendering the warrant sufficiently particularized." *Trax*, 335 Or at 609 n 8. In reaching that conclusion, the Supreme Court reversed our court's contrary conclusion that information known or obtained by an officer executing a warrant through minimal "reasonable efforts," and that was not contained in the warrant itself, could not be taken into account in assessing whether a warrant complied with the particularity requirement. *Id.* at 609-10, 609 n 8.

Further, and pertinent to this case, the court indicated that, where an otherwise sufficient warrant contained a clerical error, that clerical error would not render the warrant in violation of the particularity requirement if the executing officer had personal knowledge of that error and made the "reasonable effort" of drawing upon that knowledge to, in effect, correct the clerical error. *See Trax*, 335 Or at 609 n 8 (citing *United States v. Pisano*, 191 F Supp 861, 863 (SDNY 1961), to demonstrate that police may permissibly use reasonable effort, consisting, in part, of personal knowledge, to clarify a clerical error in the warrant and locate intended premises). In other words, when an otherwise adequately descriptive warrant contains a clerical error, that error does not render the warrant insufficient where the executing officer is aware of that error and uses personal knowledge to remedy the incorrect information in the warrant.

Here, nothing in the record suggests that the incorrect first and middle names were anything but clerical errors. Shimer indicated that he was aware of those clerical errors during his telephone call with the issuing judge. Even with those errors, the correct last name and birthdate provided sufficient guidance so that, in conjunction with Shimer's personal knowledge of defendant—including the fact that defendant was the very person for whom Shimer had sought the warrant in the first place—it was clear that defendant, and not someone else, was the particular person from whom the warrant authorized a blood draw. Accordingly, under those circumstances, the warrant sufficiently "narrowed the scope of the search to [the person] for [whom] a magistrate had found probable cause to authorize the search." *Trax*, 335 Or at 604 (internal quotation marks omitted).

In arguing to the contrary, defendant extensively relied on *State v. Derrah*, 191 Or App 511, 518-19, 84 P3d 1084 (2004), at oral argument on this matter, to support his position that the incorrect first and middle names rendered the warrant invalid under the particularity requirement. Defendant's reliance on *Derrah* is misplaced. There, we reversed and remanded a trial court's grant of a motion to controvert an affidavit. *Id.* at 518. Specifically, we concluded that the affidavit sufficiently established probable cause even though it misspelled the defendant's last name— Dennah instead of Derrah—because the affidavit, with the incorrect name removed, still provided probable cause to support the search warrant. That holding is inapposite to the issue presented here. Defendant has not challenged the determination that there was probable cause for the warrant to issue; his only argument is that the misstatement of his first and middle names rendered the warrant in violation of the particularity requirement.

In sum, the trial court correctly concluded that the warrant complied with the particularity requirement of Oregon's constitutional and statutory warrant clauses, notwithstanding the errors in stating defendant's name. As noted, we reject defendant's remaining assignments of error without written discussion.

Affirmed.