Argued and submitted April 16, 2021, affirmed December 14, 2022, petition for review denied May 18, 2023 (371 Or 106)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EDDIE BREEDWELL,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CR33103; A170050

522 P3d 876

Defendant appeals from a judgment of conviction, assigning error to the trial court's denial of his motion to suppress evidence discovered in his apartment during a warranted search. The warrant specified the address of defendant's apartment building but not his name or apartment number, and, although a supporting affidavit that accompanied the warrant at the search did include that information, it was not physically attached to the warrant or incorporated into the warrant by express reference. Defendant challenges the warrant as insufficiently particular under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. *Held*: For a defendant to establish that an affidavit cannot be considered in construing the warrant it supports, the defendant must show that, under the totality of the circumstances, there was not a sufficient connection between the warrant and the affidavit for the executing officers to have reasonably believed that the warrant and affidavit were functionally one document, such that it was not appropriate for the officers to rely on the contents of the affidavit in limiting their search. Applying that standard to the facts, the Court of Appeals concluded that defendant did not meet his burden to establish that the affidavit lacked the requisite connection to the warrant. Considering the supporting affidavit as part of the search warrant, the court concluded that the warrant met the particularity requirement of Article I, section 9. Turning to defendant's arguments under the Fourth Amendment, the court concluded that, although the warrant was facially invalid under Fourth Amendment law, the good faith exception to the federal exclusionary rule applied. Thus, the trial court did not err in denying defendant's suppression motion.

Affirmed.

Eric J. Bergstrom, Judge.

Zachard Lovett Mazer, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Joanna Hershey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F.

Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Affirmed.

Powers, J., concurring.

**SHORR, J.**

Defendant appeals from a judgment of conviction, assigning error to the trial court's denial of his motion to suppress evidence discovered in his apartment during a warranted search. The warrant specified the address of defendant's apartment building but not his name or apartment number. And, although a supporting affidavit that accompanied the warrant at the search did include that information, it was not physically attached to the warrant or incorporated into the warrant by express reference. Defendant challenged the warrant as insufficiently particular under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. The trial court denied the motion, and defendant appeals.

For the reasons that follow, we agree with the trial court's conclusions. Beginning with defendant's Article I, section 9, arguments, we conclude first that we may construe the warrant with reference to the supporting affidavit. Second, considering those documents together, we conclude that the warrant was sufficiently particular in describing the place to be searched. Finally, considering defendant's arguments under the Fourth Amendment, although the warrant failed to incorporate the affidavit and was overbroad, the good faith exception to the exclusionary rule applies. We therefore conclude that the trial court did not err and affirm.

## FACTS

In reviewing the trial court's denial of defendant's motion to suppress, we are bound by the court's findings of historical fact that are supported by constitutionally sufficient evidence in the record. *State v. Kauppi*, 277 Or App 485, 488, 371 P3d 1264, *rev den*, 360 Or 465 (2016). Here, the trial court made detailed written factual findings that were supported by constitutionally sufficient evidence in the record. Accordingly, we draw our statement of the facts primarily from those findings.

On a morning in May 2018, Portland Police Officer Green and three other officers (Jacobson, Martley, and Honel) went to defendant's apartment unit in a four-story

apartment building in downtown Portland to follow up on an anonymous tip that defendant was accepting stolen property as payment for heroin and methamphetamine. The tip included pictures, which purportedly showed the stolen property in defendant's apartment, as well as descriptions of that property. Anticipating that he would seek a search warrant, Green had already drafted sections of a warrant affidavit detailing the tip and his investigation thus far. Green also led a "mission plan" meeting with the other officers where he summarized the information in the partial affidavit and detailed "why we were there in the first place [and] what items we were looking for." When the officers arrived, Green confirmed that defendant's name appeared on a registry at the building's entrance as the resident of unit 38, the same unit specified in the tip.

Defendant answered the door and agreed to speak to officers. Through the cracked-open door, Jacobson could see inside the apartment and saw what he identified as a small black scale covered in white residue. Based on his belief that he possessed probable cause to arrest defendant for possession of methamphetamine, Green arrested defendant.

Green then left to obtain a warrant to search defendant's apartment while Jacobson and Martley remained outside of apartment 38. At the station, Green added a summary of his contact with defendant to his partial affidavit draft and had both his sergeant and a deputy district attorney review the affidavit and warrant. Green then presented the affidavit and warrant to a judge at the courthouse. The judge signed and dated the affidavit, indicating that it had been subscribed and sworn before the court. Finally, the judge signed and dated the warrant itself. Altogether, that process took a couple of hours.

Although Green's affidavit in support of the warrant specifically identified the residence to be searched as 333 NW 6th Avenue #38, the signed warrant authorized "any police officer in the state of Oregon" to search "the premises of 333 NW 6th Avenue, City of Portland, County of Multnomah, State of Oregon," mistakenly omitting defendant's specific apartment number. The warrant did not incorporate or otherwise reference the affidavit and did not

identify defendant by name. Green testified that the omission was an "oversight," rather than a measure to secure authorization to search the entire building, and that he was "not experienced in warrant writing."

After the warrant was signed, Green put both the warrant and affidavit into a single manila case file folder. The affidavit was not stapled, paperclipped, or otherwise physically appended to the warrant, but was side by side with the warrant in the folder.[1] Green returned to the station, where defendant was by then in custody in a holding cell, and read the contents of the warrant out loud to defendant. Green did not read the affidavit to defendant, however.

Green then returned to defendant's apartment with the case folder to execute the warrant, where he met Jacobson and Martley, who were still stationed outside apartment 38. Honel returned to assist with the search, and two additional officers arrived to help "with cataloging the property on the property receipts." Green did not read the warrant or affidavit to the other officers or provide the documents to them to read. Instead, when officers had questions regarding the scope of the search, they asked Green, who relied on his own memory in answering those questions. Green testified that he did not reference the warrant or affidavit during the execution of the warrant but would have done so if he had "had any confusion." Although Green testified that the folder was with him during the search, he did not clarify whether the folder was kept in a vehicle or actually brought into the apartment unit during the search. Regardless, the trial court found that the affidavit was "available to the officers during the search." The officers seized drugs and a number of items that had previously been reported as stolen. The officers searched apartment 38 only and did not search any other apartment unit located at 333 NW 6th Avenue.

Finally, Green left a copy of the warrant, without the affidavit, along with the warrant return and property receipts, on a coffee table inside the apartment. The officers then left the premises. Green did not learn that the search

---

[1] The evidence was not clear as to whether the warrant and affidavit were the only two documents in the folder, or whether there were other documents associated with the investigation of defendant in the folder.

warrant had failed to include defendant's apartment number until months later, when the prosecutor alerted him to the issue.

Defendant was charged with various drug crimes. Before trial, defendant moved to suppress the evidence obtained pursuant to the search warrant, challenging the warrant as insufficiently particular and facially invalid under Article I, section 9, and the Fourth Amendment, because the warrant failed to include defendant's name or specific apartment number. Citing *State v. Mansor*, 363 Or 185, 203, 421 P3d 323 (2018) (*Mansor II*), defendant further contended that the court could not consider the affidavit in evaluating defendant's warrant challenge under Article I, section 9, because the affidavit was not incorporated by reference into the warrant or physically attached to the warrant. As to the Fourth Amendment, defendant similarly contended that the warrant was facially invalid, that those defects were not cured by the affidavit, and that the good faith exception to the exclusionary rule did not apply because the officers had not relied on the affidavit during the warrant's execution.

The state argued that the warrant was sufficiently particular under Article I, section 9, for two separate reasons. First, the stated argued that *Mansor II* supported its argument that the affidavit cured any defects in the warrant when it accompanied the warrant during execution.[2] Second, the state argued that the warrant was sufficiently particular even standing alone, because the missing apartment number was a "mere clerical error" that was not fatal because Green was able to resolve the ambiguity by relying on reasonable efforts, including his personal knowledge of the correct apartment. *See Kauppi*, 277 Or App at 490 ("[W]hen an otherwise adequately descriptive warrant contains a clerical error, that error does not render the warrant insufficient where the executing officer is aware of that error and uses personal knowledge to remedy the incorrect information in the warrant."). Addressing defendant's

_____

[2] The state conceded that the warrant failed to incorporate the affidavit by reference. However, the state argued that incorporation by reference was not a requirement if the affidavit was attached to the warrant, and it defined attachment to include accompanment.

Fourth Amendment arguments, the state conceded that the warrant was facially invalid and could not be cured by the accompanying affidavit, but contended that the good faith exception to the exclusionary rule applied.

At a subsequent hearing on the motion, the parties elicited the facts summarized above. The state admitted the warrant, the affidavit, and the warrant return into evidence as state's exhibits 1A, 1B, and 1C, respectively. All three documents bore the same stamp, indicating that they had been filed with the court on May 29, 2018, a couple of weeks after the search.

The trial court denied defendant's motion. In explaining its ruling from the bench, the court first noted that defendant bore the burden of proof on his warrant challenge. The court then explained that "the bottom line" was that "the officers only intended to search [defendant's] apartment, * * * only search[ed defendant's] apartment," and "had all the information with them at the time and available to them." The court also noted that defendant was not "prejudiced in any way" by the warrant omission. Considering the above, the court concluded that defendant had not met his burden to show that the warranted search was unlawful under Article I, section 9. As to defendant's federal arguments, the court concluded that the good faith exception to the exclusionary rule applied.

Defendant entered a conditional guilty plea to Count 2, delivery of heroin, and Count 5, delivery of methamphetamine, reserving his right to appeal the denial of his motion to suppress.[3] The court entered a judgment of conviction on those counts, and this timely appeal followed.

On appeal, defendant assigns error to the court's denial of his motion to suppress. We review that ruling for legal error. *State v. Harris*, 369 Or 628, 633, 509 P3d 83, *cert den*, ___ US ___, 143 S Ct 485, 214 L Ed 2d 277 (2022). We consider defendant's arguments under Article I, section 9, before turning to his arguments under the Fourth Amendment. *See State v. Babson*, 355 Or 383, 432, 326 P3d 559 (2014) (noting Oregon's "first things first"

_____
[3] The state dismissed the remaining charges.

approach to considering state law arguments before federal ones).

Defendant reiterates his arguments made in the trial court, contending that the warrant was facially invalid and failed to meet the particularity requirement of Article I, section 9, and that neither the affidavit nor Green's personal knowledge of the apartment number cured that defect. Defendant asks that we adopt the rule that an affidavit may cure an insufficiently particular warrant only if the affidavit is both incorporated by reference into the warrant and physically attached to the warrant. In the alternative, defendant argues that, "even if Article I, section 9, does not require both incorporation and attachment, this court should hold that Article I, section 9, requires actual [physical] attachment *at least* where the warrant fails to incorporate the affidavit by reference," because "only then can any Oregon officer determine the particular premises for which a search is authorized." (Emphasis in original.) Under the Fourth Amendment, defendant repeats his argument that the warrant was insufficiently particular and that the good faith exception does not apply.

In response, the state contends that the warrant was sufficiently particular under Article I, section 9, because with "reasonable effort, any police officer executing the search warrant could have located defendant's apartment." *See State v. Trax*, 335 Or 597, 603, 75 P3d 440 (2003) ("A description in a warrant of the place to be searched satisfies the particularity requirement if it permits the executing officer to locate with reasonable effort the premises to be searched." (Internal quotation marks omitted.)). According to the state, any officer could locate defendant's apartment with reasonable efforts by reviewing Green's affidavit, conferring with Green himself, speaking with the officers who had been standing outside defendant's apartment, or reviewing the building registry. Alternatively, the state contends that any facial invalidity was cured by the affidavit, because under *State v. Mansor*, 279 Or App 778, 784 n 10, 381 P3d 930 (2016), *aff'd*, 363 Or 185, 421 P3d 323 (2018) (*Mansor I*), the affidavit was sufficiently attached to the warrant. As to the Fourth Amendment, the state concedes that the warrant was defective but asserts that the good faith exception applies.

PARTICULARITY UNDER ARTICLE I, SECTION 9

We turn to our consideration of defendant's arguments under Article I, section 9. Although the parties have framed the issues before us in slightly different ways, we begin by considering whether the information in Green's supporting affidavit may be properly considered in construing the warrant. *See Mansor II*, 363 Or at 203 (similarly considering that question before turning to whether the warrant met the particularity requirement). There is little Oregon case law regarding what standards or rules apply when the parties dispute whether an affidavit may be considered in construing a warrant, and we recognize that the way in which a court answers that question can determine whether the search executed pursuant to that warrant is deemed constitutional. Those concerns lead us to preface and ground the discussion that follows in the particularity requirement of Article I, section 9, and the purposes it serves.

Under Article I, section 9, "no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

"[T]he constitutional particularity requirement implicates two analytically distinct, but frequently practically intertwined, concepts. First, the warrant, as supplemented by any attached or incorporated supporting documents, must so clearly describe the place to be searched and the items to be seized and examined that officers can, with reasonable effort, ascertain that place and those items to a reasonable degree of certainty. Second, the warrant must, to the extent reasonably possible, be drawn in such a way as to preclude seizures and searches not supported by probable cause.

"Those two concepts—specificity and overbreadth—again, have independent significance. For example, a warrant can precisely and unambiguously identify items to be forensically examined, satisfying the specificity concern, but nevertheless be invalid as overbroad if there is no probable cause to examine some of those items. However, the two can, and frequently do, conflate. That is, failure to identify with sufficient specificity the place to be searched

or the items to be seized and examined can sanction invasions of protected privacy unsupported by probable cause."

*Mansor I*, 279 Or App at 792-93 (internal quotation marks and citations omitted). Stated more succinctly, "[r]egarding places, the particularity requirement exists to narrow the scope of the search to those premises for which a magistrate has found probable cause to authorize the search." *Mansor II*, 363 Or at 212 (internal quotation marks omitted); *see also State v. Ingram*, 313 Or 139, 145, 831 P2d 674 (1992) (insufficiently particular warrants require officers to employ discretion in deciding where to search, running the risk that the officers "could invade privacy interests not intended by the magistrate to be invaded and could conduct searches not supported by probable cause").

Applying those principles, a hypothetical warrant that authorizes the search of an entire apartment building when there is only probable cause to search a single apartment unit would allow police intrusion into the remaining apartments without probable cause. Such a warrant would fail to meet our constitutional requirements. However, the purposes of the particularity requirement may nevertheless be served if some other document, such as a supporting search warrant affidavit, limits the officers' search to the specific apartment that was actually authorized by the magistrate's probable cause determination.

But a warrant affidavit can only serve that narrowing function if its status is elevated above that of a typical warrant affidavit: The circumstances must reasonably communicate to the executing officers that the warrant and affidavit are functionally one document, such that it is appropriate for the officers to rely on the contents of the affidavit in limiting their search. *See Mansor I*, 279 Or App at 793 (particularity requirement ensures that "officers can, with reasonable effort, ascertain [the place to be searched and the items to be seized] to a reasonable degree of certainty" (internal quotation marks omitted)); *see also Mansor II*, 363 Or at 203-04 (discussing best practices to "establish a connection between the warrant and an affidavit" such that "the contents of an affidavit should be considered in a challenge to a warrant['s particularity]"). Those same principles

underly rules under the Fourth Amendment[4] requiring incorporation by reference and attachment to ensure that a supporting affidavit is only considered in construing a warrant if executing officers were reasonably limited by the affidavit's contents. *See, e.g.*, *Groh v. Ramirez*, 540 US 551, 557-58, 124 S Ct 1284, 157 L Ed 2d 1068 (2004) ("most [federal] Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant"); *U.S. v. SDI Future Health, Inc.*, 568 F3d 684, 699 (9th Cir 2009) ("The goal of the cure by affidavit rule [under Ninth Circuit case law] is to consider those affidavits that limit the discretion of the officers executing the warrant." (Internal quotation marks omitted.)).[5]

With that in mind, we consider the leading Oregon case to have addressed the evidentiary standard that must be met for a court to consider the contents of an affidavit in construing a warrant: *Mansor II*, 363 Or at 203-04. Although the Supreme Court's opinion in *Mansor II* was primarily focused on analyzing the particularity of a warrant to search the defendant's computers, the court began its analysis by considering whether the information in the warrant's supporting affidavit could be considered in construing the warrant. *Id.* at 203. As relevant here, the defendant argued that the warrant was facially deficient and could not be cured by the contents of the affidavit because "the state failed to prove that the affidavit was attached to, or otherwise incorporated in, the warrant."[6] *Mansor I*, 279 Or App at

---

[4] The Fourth Amendment provides, in part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[5] Notably, however, Oregon has never adopted the federal test described above for determining when a warrant can be construed with reference to the affidavit.

[6] The defendant in *Mansor I* argued that we should adopt the Ninth Circuit standard requiring both incorporation *and* attachment. However, we concluded that that argument was not preserved and did not address it. *See* 279 Or App at 788 n 14 ("Defendant argues, for the first time on appeal, that, under the Ninth Circuit's conjunctive 'cure by affidavit' formulation, *see, e.g.*, [*SDI Future Health, Inc.*, 568 F3d at 699-700], the state was required to establish not only attachment, but also express incorporation by reference. However, defendant never invoked the Ninth Circuit's formulation before the trial court[.]").

787. The state asserted that the trial court record "evinced that the affidavit was attached to the warrant when it was executed" and argued that the defendant bore the burden to prove otherwise. *Id.* at 789. The only evidence in the record relevant to the issue had been admitted by the state and left unrebutted by the defendant. First, although the warrant did not expressly mention the affidavit, it incorporated "Attachment A" by reference, which was a document that was stapled to the affidavit. *Mansor II*, 363 Or at 203 n 11; *Mansor I*, 279 Or App at 782. Second, the trial court admitted certified copies of the affidavit (with Attachment A appended), the signed search warrant, and the warrant return together as one exhibit bearing an identical time stamp. *Id.* at 785.

On appeal, our court placed the relevant burden on the defendant and concluded that the contents of the affidavit could be considered in evaluating the defendant's warrant particularity challenge. *Id.* at 790-91. We began by acknowledging that "'the defendant bears the burden of proving the unlawfulness of a warranted search.'" *Id.* at 789 (quoting *State v. Walker*, 350 Or 540, 554, 258 P3d 1228 (2011)). Thus, in challenging the lawfulness of the warrant-based seizure and search of the defendant's computers, the

> "defendant bore the burden of establishing facts pertaining to his challenge to the validity of the warrant itself. Whether [the] affidavit was attached to, or otherwise sufficiently accompanied, the warrant when it was executed was such a fact. Accordingly, defendant bore the burden of proving that that circumstance did not exist. However, as noted, defendant adduced *no* proof on that matter at the suppression hearing—and, thus, failed to meet that burden."

*Mansor I*, 279 Or App at 790 (internal quotation marks, brackets, and citations omitted; emphasis in original).

On review, the Supreme Court agreed. *Mansor II*, 363 Or at 203. Although the court did not independently analyze the issue, it appeared to adopt our view of the defendant's burden:

> "The Court of Appeals observed that, when a search is conducted pursuant to a warrant, the defendant bears 'the

burden of establishing facts pertaining to his "challenge [to] the validity of the warrant itself."' *Mansor* [*I*], 279 Or App at 790 (quoting *Walker*, 350 Or at 555 (brackets in *Mansor* [*I*])). Here, the state's contention that the affidavit was attached to and referenced in the warrant at the time of execution was supported, as the Court of Appeals said, by 'permissible, albeit hardly indubitable, inference.' *Id.* Defendant presented no evidence to controvert that inference. *Id.* On that record, the Court of Appeals concluded that defendant fell short of his burden of production and therefore considered the affidavit to be part of the warrant for purposes of its review.

> "We agree with the Court of Appeals that defendant failed in the trial court to establish the factual basis for his argument on appeal; for purposes of this case, we consider the text of the affidavit to be part of the warrant."

*Mansor II*, 363 Or at 203. In other words, the court appeared to agree with our conclusion that it was the defendant's burden to prove that the affidavit and warrant lacked a requisite level of connection at the time the warrant was executed.[7] Finally, the court closed with a warning:

> "[R]ather than relying on indirect inferences to establish a connection between the warrant and an affidavit, the better practice is for the warrant to include specific text from the affidavit or to incorporate the affidavit by express reference in the warrant. Merely attaching the affidavit or an exhibit with an attached affidavit to the warrant, without some textual reference, creates the ambiguous situation apparently present here."

*Mansor II*, 363 Or at 204.

We glean two main takeaways from *Mansor I* and *II* that inform our consideration of whether we may consider an affidavit in construing a warrant under Article I, section 9: First, defendant carries the burden of proof to establish that the affidavit should *not* be considered in evaluating the warrant's particularity. The fact that the defendant bore that

---

[7] We acknowledge that *Mansor II* was not entirely clear in its discussion of the burdens applicable to this particular warrant challenge argument. Nevertheless, we conclude that the most sensible reading of *Mansor II* is that it adopted *Mansor I*'s articulation of the defendant's burden. At the very least, the court in *Mansor II* did not overrule our decision in *Mansor I* or explicitly reject our analysis of the relevant issue.

burden was central to the court's conclusion in *Mansor II* that the affidavit could be considered in construing the warrant. Second, whether the circumstances establish a sufficient connection between a warrant and supporting affidavit such that the affidavit can be considered in construing the warrant is viewed from the perspective of the circumstances *at the time of the search. See Mansor I*, 279 Or App at 790 (discussing the defendant's failure to establish that the affidavit lacked a sufficient connection to the warrant "when it was executed"). *Mansor I* and *II* therefore frame our inquiry here: Did the defendant meet his burden to prove that the affidavit was not sufficiently connected to the warrant at the time the warrant was executed?

However, because the defendant in *Mansor I* and *II* failed to present *any* evidence to support his warrant challenge argument, the relevant analysis largely stopped there. Neither our court nor the Supreme Court defined incorporation by reference or attachment under Oregon law. Neither opinion explained what sort of analysis a court should engage in if a defendant puts on evidence that an affidavit was *not* sufficiently connected to the warrant to be considered in construing the warrant, or what role incorporation by reference and attachment should play in that analysis. Perhaps most importantly, neither opinion explained what evidence a defendant must present to prove that an affidavit and warrant lacked the requisite connection.[8] The only guidance the Supreme Court provided on those questions was (1) its express approval of our court's comment that the state's evidence presented a "permissible, albeit hardly indubitable, inference" that the affidavit "was attached to and referenced in the warrant at the time of execution," and (2) its recommendation that "[t]he better practice is for the warrant to

---

[8] We note also that *Mansor II* did not describe the question of whether an affidavit may be considered in construing a warrant using "curing" language, unlike many federal cases considering the same issue under the Fourth Amendment. *See, e.g., SDI Future Health, Inc.*, 568 F3d at 699 (addressing whether court could "evaluate the affidavit and the warrant as a whole, allowing the affidavit to cure any deficiencies in the naked warrant" (internal quotation marks omitted)). However, we understand the analysis under Article I, section 9, in essentially the same way: A search conducted pursuant to an invalid warrant may nevertheless be constitutional if a supporting affidavit is able to "cure" the warrant's defects and ensure that the search is limited to those premises for which the magistrate found probable cause to authorize a search.

include specific text from the affidavit or to incorporate the affidavit by express reference in the warrant," because "[m]erely attaching the affidavit or an exhibit with an attached affidavit to the warrant, without some textual reference, creates the ambiguous situation apparently present here." *Mansor II*, 363 Or at 203-04. *Mansor I* and *II*, therefore, did not declare any bright-line rule for determining whether an affidavit may be considered in construing a warrant, in contrast with federal cases requiring evidence of both accompaniment and express incorporation. *See SDI Future Health, Inc.*, 568 F3d at 699 ("We consider an affidavit to be part of a warrant, and therefore potentially curative of any defects, only if (1) the warrant expressly incorporated the affidavit by reference and (2) the affidavit either is attached physically to the warrant or at least accompanies the warrant while agents execute the search." (Internal quotation marks omitted.)). Rather, contrary to the state's argument that an affidavit need only be "present and available for immediate reference when the warrant is executed," citing *Mansor I*, 279 Or App at 784 n 10, we understand from *Mansor I* and *II* that the assessment is a practical one based on the totality of the circumstances.

Thus, we are tasked with determining, as a matter of first impression, what evidence a defendant must put forward to prove that an affidavit was not sufficiently connected to the warrant it supports to permit a court to refer to the affidavit in construing the warrant. In so doing, we rely on *Mansor II* and the body of Oregon law discussing the purposes animating the particularity requirement generally. As we explained earlier, the particularity requirement aims to ensure that executing officers search only those areas for which the issuing magistrate found probable cause to search. *See Mansor II*, 363 Or at 212 ("the particularity requirement exists to narrow the scope of the search to those premises for which a magistrate has found probable cause to authorize the search" (internal quotation marks omitted)). When the face of a warrant fails to be sufficiently particular to provide executing officers with appropriate limitations, it is possible that a supporting affidavit may provide those limitations and cure the defect. But the affidavit must be so connected to the warrant that the two are functionally one

document when the warrant is executed to actually provide those limitations. Otherwise, an officer may be left free to use discretion during the search, something which is directly at odds with the limits Article I, section 9, was intended to enforce. *See Ingram*, 313 Or at 145 (insufficiently particular warrants require officers to employ discretion in deciding where to search, creating the risk that the officers "could invade privacy interests not intended by the magistrate to be invaded and could conduct searches not supported by probable cause").

Defendant contends that an affidavit and warrant must be so combined that *any* officer holding legal authority to execute the warrant would be limited by the contents of the affidavit. In other words, defendant contends that a warrant addressed to "any police officer in the state of Oregon" cannot be cured by an affidavit unless any officer in the state would know to be limited by that document. However, that argument frames the inquiry so widely that it loses sight of the purposes of the particularity requirement. The particularity requirement is concerned with ensuring that the scope of a search is appropriately limited to the premises for which the issuing magistrate found probable cause to authorize the search. As relevant here, the inquiry is focused on whether the warrant reasonably communicated the boundaries of the magistrate's probable cause determination to the executing officers. It looks to what the circumstances reasonably communicated to the actual executing officers and is not focused on hypothetical executing officers who were not in fact involved in the actual search. *See Mansor II*, 363 Or at 203 ("the state's contention that the affidavit was attached to and referenced in the warrant at the time of execution was supported"); Wayne R. LaFave, *2 Search and Seizure* § 4.5(a), 700 (6th ed 2020) (it is appropriate to consider the affidavit in construing the warrant if "it is clear that the executing officers were in a position to be aided by these documents"). Although the standard is an objective one, it is nevertheless planted in the circumstances as they actually occurred, like our constitutional particularity standard generally. *See Trax*, 335 Or at 603 ("a description in a warrant is constitutionally sufficient if it permits the executing officer to locate, with 'reasonable effort,' the

premises intended to be searched"); *Kauppi*, 277 Or App at 490 ("an executing officer permissibly may draw upon that officer's personal knowledge, as well as information obtained through additional, 'minimal' reasonable efforts, regarding the proper location of the search").[9]

Thus, we conclude that, for a defendant to establish that an affidavit cannot be considered in construing the warrant it supports, the defendant must show that, under the totality of the circumstances, there was not a sufficient connection between the warrant and the affidavit for the executing officers to have reasonably believed that the warrant and affidavit were functionally one document, such that it was not appropriate for the officers to rely on the contents of the affidavit in limiting their search. Evidence establishing that the affidavit and warrant were physically attached or that the warrant expressly incorporated the affidavit are both relevant. Indeed, as *Mansor II* instructs, those facts constitute the best evidence that a warrant and affidavit were functionally one document. *See* 363 Or at 204 ("[T]he better practice is for the warrant to include specific text from the affidavit or to incorporate the affidavit by express reference in the warrant. Merely attaching the affidavit or an exhibit with an attached affidavit to the warrant, without some textual reference, creates the ambiguous situation apparently present here."). Nonetheless, neither type of evidence is dispositive, nor are both required to defend against a defendant's challenge. Rather, the test under Article I, section 9, is a practical one, and courts should consider the totality of the circumstances that bear on whether the executing officers reasonably understood that the warrant and affidavit

---

[9] Additionally, we note that much of defendant's argument that we must view the inquiry from the perspective of "any officer" is supported by citation to *State v. Bush*, 174 Or App 280, 289, 25 P3d 368 (2001), *rev den*, 334 Or 491 (2002) (describing the particularity inquiry as "whether any police officer executing the search warrant could ascertain with reasonable effort the identity of the place to be searched" (quotation marks and emphasis omitted)), and *State v. Davis*, 106 Or App 546, 552, 809 P2d 125 (1991) (stating that an "officer's independent knowledge cannot cure an erroneous description" in a warrant). However, those cases do not appear to reflect current law after the issuance of *Trax* and *Kauppi*. *See Kauppi*, 277 Or App at 490 (explaining *Trax* and stating that a clerical error "does not render the warrant insufficient where the executing officer is aware of that error and uses personal knowledge to remedy the incorrect information in the warrant").

were functionally one document. Relevant facts may relate to the warrant's issuance, such as evidence that the warrant expressly incorporated the affidavit when issued, or that the executing officer was also the affiant and witnessed the magistrate sign and date both documents. Relevant facts may also relate to the warrant's execution, such as evidence that the executing officers did not have the affidavit with them during execution. And, as *Mansor II* illustrates, there may be factual scenarios where there is only a "permissible, albeit hardly indubitable, inference" that the affidavit was reasonably considered part of the warrant at execution, creating an "ambiguous situation." 363 Or at 203-04. Presented with those facts and no contravening evidence from a defendant, however, the only appropriate conclusion is that the defendant failed to meet his burden to prove that the affidavit was not part of the warrant.[10]

We acknowledge that this standard is not the standard proposed by either party, both of whom proposed rules to establish that an affidavit is part of a warrant by a set formula of attachment, incorporation by reference, or both. However, those proposed rules require a rigidity that we conclude is not required by our constitutional standards. *See Mansor II*, 363 Or at 204 (considering contents of affidavit in construing warrant even though warrant did not mention affidavit and it was "ambiguous" whether affidavit and warrant were attached at time of execution). The relevant inquiry does not reduce solely to whether an affidavit and warrant are cross-referenced, stapled, paperclipped, or stored within a single folder. A variety of factual scenarios may support a defendant's arguments that it was not objectively reasonable for the officers who executed the search to understand the supporting affidavit as functionally part of the warrant and a limit on their search authorization. For instance, a circumstance where the affidavit was not present at execution would be strong support for such an

---

[10] The defendant's burden of proof when challenging a warrant is "to establish by a preponderance of the evidence that the warrant is defective." *State v. Cannon*, 299 Or App 616, 625, 450 P3d 567 (2019). Because *Mansor II* extended the defendant's burden of proof on his warrant challenge to his subsidiary argument that the affidavit could not be considered in construing the warrant, the same preponderance standard applies to that issue as well.

argument. But we do not attempt to quantify or prescribe all the ways in which a court may reasonably reach that conclusion.

Finally, we apply that standard to the facts of this case and conclude that defendant did not meet his burden to establish that the affidavit lacked the requisite connection to the warrant. Here, the relevant evidence elicited at the suppression hearing was limited to the following: The warrant did not expressly incorporate the affidavit by reference or otherwise refer to the affidavit, and the affidavit and warrant were not physically attached by paperclip, staple, or other means. However, after the judge signed the warrant and affidavit in Green's presence, Green placed both documents side by side in a single manilla case file folder and brought the folder with him to execute the warrant. Both documents bore the judge's signature and the date of May 17, 2018. The officers did not rely on either document during the search—instead, Green relied on his memory, and the other officers relied on Green when questions arose. However, Green testified that he would have looked to the warrant and affidavit had any confusion arose regarding the scope of the search as authorized. The warrant, affidavit, and warrant return were subsequently filed with the court on May 29.

Considering those facts, defendant did not meet his burden to establish that the affidavit and warrant lacked the requisite connection for Green and the other executing officers to have reasonably viewed them as functionally one document that imposed limitations on their search. Defendant elicited some evidence in support of his challenge, unlike in the defendant in *Mansor I* and *II*. Notably, the warrant did not expressly incorporate the affidavit by reference, nor were the documents physically attached. However, that evidence does not establish that the affidavit and warrant lacked the requisite connection for the executing officers to have reasonably understood that the warrant and affidavit were functionally one document such that they could refer to the affidavit in executing the warrant. Green testified that he personally delivered his affidavit and the warrant to the judge, who then signed the

warrant and affidavit before Green placed both documents side-by-side in a manila folder and brought the folder with him to execute the warrant. That evidence established that, as the affiant officer, Green had personal knowledge that the judge's probable cause determination was based on both the warrant and affidavit, and that the warrant and affidavit in the manila folder were the documents that the judge signed. Considering those facts, the omission of an express reference in the warrant incorporating the affidavit or any staple or paperclip physically attaching the documents are insufficient to establish that it would not have been reasonable for Green to have understood the affidavit and warrant to be functionally one document that together limited the scope of the search. Even considering that other officers assisted in the warrant execution and that none of the executing officers looked at the affidavit during that time, the evidence was still insufficient to meet defendant's burden on this record when considering the following facts: (1) the remaining executing officers who actually participated in the search of defendant's apartment (rather than those who assisted by simply cataloguing items) had accompanied Green to defendant's apartment during the initial investigation and had been briefed on Green's investigation; (2) two of those officers remained outside of defendant's apartment while Green sought the warrant; (3) all of the executing officers understood that Green was the affiant officer who had obtained the warrant; (4) Green was on the scene during the execution; (5) Green brought the affidavit and warrant with him during the search; and (6) the executing officers relied on Green to answer questions about the scope of the search. In total, evidence that the warrant omitted any express reference to the affidavit, that the documents were not physically attached, and that the executing officers did not themselves refer to the affidavit throughout the search, under the totality of the circumstances, is insufficient to meet defendant's burden. At most those facts raise ambiguity as to whether the executing officers reasonably understood the affidavit to be part of the warrant. They do not prove the reverse—that the executing officers could not have reasonably understood that the affidavit and warrant were functionally one document—especially in light of evidence

that the affidavit was side-by-side with the warrant in a manilla case folder, present at execution, and available for reference.

With that preliminary issue resolved, we turn to whether the search warrant (including the affidavit) met the particularity requirement of Article I, section 9, and readily conclude that it did. In determining whether a warrant describes the place to be searched with sufficient particularity, we consider whether the description "permits the executing officer to locate, with reasonable effort, the premises intended to be searched." *Trax*, 335 Or at 603 (internal quotation marks omitted). Here, the warrant to search defendant's apartment specified the street address of defendant's apartment building, and the affidavit named defendant as the targeted individual and specified the unit where he resided. Together, those documents specified the place to be searched with constitutionally sufficient particularity.

### PARTICULARITY UNDER THE FOURTH AMENDMENT AND THE GOOD FAITH EXCEPTION TO THE FEDERAL EXCLUSIONARY RULE

We turn to defendant's arguments under the Fourth Amendment. In the trial court and before us on appeal, the state does not contest that the warrant violated the Fourth Amendment particularity requirement and was not cured by the supporting affidavit. *See generally Groh*, 540 US at 557-58 ("most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant"). Instead, the only issue before us is whether the good faith reliance exception to the federal exclusionary rule should apply. The trial court ruled that the good faith exception did apply, stating that the officers

"never did anything other than intending to be at his apartment. And, there are kind of unique circumstances where they meet, they talk [about the investigation thus far.] *** They went there. They did a knock and talk. *** [T]he affidavit was mostly filled out but for *** what happened at the knock and talk. They went straight back to the apartment. So, I think—there's not a part where the State acts

in bad faith where the police are doing something wrong or trying to take an advantage. So, * * * I think they act in good faith all along but for lack of attention to detail, which everyone up the chain missed."

In written findings, the court also found that the officers were not "interested in searching" any other apartment in the building, that the affidavit and warrant "were available to the officers during the search," that the officers "searched apartment #38 and no other" apartment unit, and that "Green testified that they did not reference the warrant or affidavit during the execution of the warrant but had there been confusion they would have referred to the affidavit."

We summarize the controlling law on that issue. Evidence obtained in violation of the Fourth Amendment is usually subject to the judicially developed exclusionary rule. *Illinois v. Krull*, 480 US 340, 347, 107 S Ct 1160, 94 L Ed 2d 364 (1987). However, the United States Supreme Court has long stated that the exclusionary rule is "designed to safeguard Fourth Amendment rights generally through its deterrent effect," restricting its application "to those areas where its remedial objectives are thought most efficaciously served." *United States v. Peltier*, 422 US 531, 538-39, 95 S Ct 2313, 45 L Ed 2d 374 (1975). Specifically, the rule should "deter police misconduct rather than * * * punish the errors of judges and magistrates." *United States v. Leon*, 468 US 897, 916, 104 S Ct 3405, 82 L Ed 2d 677 (1984). "[E]vidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Krull*, 480 US at 348-49 (internal quotation marks omitted).

The Supreme Court established the "good faith exception" to the exclusionary rule in *Leon*. 468 US at 922-23. There, the court explained that the exclusionary rule should not apply to evidence obtained through an invalid search warrant if the warrant was issued by a neutral magistrate and the officer reasonably relied on it. *Id.* The court explained:

"Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued

> by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search. Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued."

*Id*. (brackets, internal quotation marks, and citations omitted). For example, "depending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id*. at 923. In short, the good-faith inquiry is "whether a reasonably well[-]trained officer would have known that the search was illegal in light of all of the circumstances." *Herring v. United States*, 555 US 135, 145, 129 S Ct 695, 172 L Ed 2d 496 (2009) (internal quotation marks omitted).

The court has applied *Leon* a number of times, but one of those cases is particularly relevant here. In *Herring*, an officer arrested the defendant in reliance on a police record indicating that there was an outstanding warrant for the defendant's arrest. 555 US at 137. However, that record was later determined to be erroneous due to a police employee error. *Id*. at 137-38. The court concluded that the good faith exception applied because the error was the result of "nonrecurring and attenuated negligence" that did not require the deterrence of exclusion. *Id*. at 144.

> "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. The error in this case does not rise to that level."

*Id*.

Applying those principles, we readily conclude that the good faith exception applies here. The warrant errors

that occurred here were the result of isolated negligence. *See Herring*, 555 US at 137. The evidence supports that Green was inexperienced in writing warrants, that neither Green nor any of the other executing officers were aware of the omission at the time of the search, and that Green did not omit the apartment number intentionally in an effort to search other apartments in defendant's building. There is no evidence that any of the officers executing the warrant acted in a dishonest or reckless manner or sought to take advantage of the error to expand the scope of the search. *See Krull*, 480 US at 348-49 ("[E]vidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." (Internal quotation marks omitted.)). Additionally, the warrant error in this case was one that Green, his sergeant, a deputy district attorney, and the issuing judge all missed—thus, we cannot say that the defect was so grossly negligent that "a reasonably well[-]trained officer would have known that the search was illegal in light of all of the circumstances." *Herring*, 555 US at 145 (internal quotation marks omitted). For all those reasons, the remedial objectives and deterrence effect of the federal exclusionary rule would not be served by the exclusion of this particular evidence. *See Peltier*, 422 US at 538-39.

Notably, the parties do not rely on the above United States Supreme Court cases setting forth the general rule, instead pointing us to *SDI Future Health, Inc.*, 568 F3d at 684, and *U.S. v. Luk*, 859 F2d 667 (9th Cir 1988). "[W]e are not bound by decisions of the Ninth Circuit—or any other federal circuit—even on questions of federal law." *State v. Ward*, 367 Or 188, 197, 475 P3d 420 (2020); *see also Van De Hey v. U.S. National Bank*, 313 Or 86, 95 n 9, 829 P2d 695 (1992) ("only decisions of the Supreme Court of the United States are binding on this court in the interpretation of federal law"). However, we "often give particular weight to [Ninth Circuit] decisions because Oregon lies in that circuit." *Miller v. Pacific Trawlers, Inc.*, 204 Or App 585, 612 n 23, 131 P3d 821 (2006). Thus, we consider those cases for their persuasive value.

Doing so, we conclude that *Luk* is nearly indistinguishable from the instant case, and, like the controlling Supreme Court law, supports the conclusion that the officers here reasonably relied on their belief that the warrant was valid, and that Green's mistake in failing to either include defendant's apartment number in the warrant or incorporate the affidavit into the warrant by reference is not the type of police misconduct to which the federal exclusionary rule applies.

In *Luk*, the search warrant at issue lacked sufficient particularity. 859 F2d at 676. Although the warrant could have theoretically been cured by a supporting affidavit that contained the missing information, the affidavit was not expressly incorporated into the warrant by reference and therefore did not satisfy the federal test requiring express incorporation by reference for an affidavit to cure a deficient warrant. *Id.* at 676-77. Thus, the court turned to whether the evidence discovered as a result of the deficient warrant was subject to suppression. *Id.* The Ninth Circuit concluded that "the executing officers' reliance upon the affidavit [could serve] as evidence of their reasonable reliance on the validity of the warrant or their good faith." *Id.*

The court turned to the facts, noting that the affidavit "provided the particularity that the warrant lacked," and that the agents had relied on the affidavit in limiting their search to items for which there existed probable cause to seize. *Id.* at 677.

> "Agent Bammer, who was specifically authorized to execute the warrant, read Agent Koplik's affidavit prior to the search; at the briefing immediately prior to the warrant's execution, Koplik apprised Bammer and the two other agents who assisted in the search of the particular items to seize; Koplik was present at the premises and advised the agents concerning what items were properly within the scope of the search; and the agents specifically relied on the affidavit in determining at the scene what items were properly within the scope of the search."

*Id.* In other words, the evidence showed that the agents limited their search to only those items described in the affidavit—for which there was probable cause to seize—rather

than seizing "evidence to the full extent of [their] overbroad warrant." *Id.* at 677-78. The court noted that it was "unclear from the record whether the affidavit was actually in hand during the search," but concluded that even "the absence of the affidavit at the scene [did not preclude] a finding of good faith." *Id.* at 677 n 10. In light of those facts, the court concluded that the warrant there, considered "in conjunction with the affidavit," was not "so facially overbroad as to preclude reasonable reliance by the executing officers." *Id.* at 678.

We consider the Ninth Circuit's analysis in *Luk* to be persuasive, supporting our conclusion that Green and the other officers reasonably relied on the unincorporated affidavit to limit their search to those areas for which there existed probable cause to search. Here, Green had already drafted much of the warrant affidavit before visiting defendant's apartment, and he used that partial affidavit to brief Jacobson, Martley, and Honel before they approached defendant's door. After defendant's arrest, Green added to the partial affidavit to detail the morning's visit and arrest of defendant and obtained a search warrant. Later that same day, when the officers executed the warrant, the affidavit was available for use as a reference and the officers in fact limited their search to only the specific apartment unit described in the affidavit. Although other officers attended the warrant execution to catalogue the seized property on property receipts, the actual search team was limited to officers who had been briefed on the partial affidavit that morning and who understood the bounds of their search to pertain to only defendant's apartment. As in *Luk*, the officers here reasonably relied on the information in the affidavit to limit their search to the area for which the magistrate had found probable cause to search. Defendant places significant weight on Green's testimony—and the court's later finding—that none of the officers actually referenced the affidavit during the search. However, we have not discovered any controlling law that would render the good faith exception inapplicable merely because executing officers, who were aware of the contents of an affidavit and relied on that information to limit their search, did not need to refer back to the document while executing the warrant. *See*

*Luk*, 859 F2d at 677 n 10 (although it was "unclear from the record whether the affidavit was actually in hand during the search," even "the absence of the affidavit at the scene [does not preclude] a finding of good faith"). In short, we conclude that Green and the other officers reasonably relied on the contents of Green's affidavit during their search.

Although defendant argues that *SDI Future Health, Inc.* is sufficiently similar and should control, we disagree. There, the Ninth Circuit applied *Luk* and concluded that the good faith exception did not apply. 568 F3d at 706. The court first concluded that the supporting affidavit was part of the warrant, but that the warrant was still overbroad in some respects. *Id.* at 701, 704-05. Specifically, the warrant authorized the search and seizure of categories of items such as "non-privileged internal memoranda and E-mail"; "[d]ocuments relating to bank accounts, brokerage accounts, trusts"; and "[r]olodexes, address books and calendars." *Id.* at 704. Those categories were so broad, even when read in light of the limitations provided by the incorporated affidavit, that they bore no relation to the magistrate's determination that probable cause existed to search specifically for evidence relating to SDI's involvement in fraudulent sleep studies. *Id.* at 704-05.

The court then turned to the good faith exception and whether the search was conducted in good faith reliance upon an objectively reasonable search warrant, citing *Luk* for the rule that "where a warrant is defective without incorporating a supporting affidavit, the good faith exception may still apply" if the government is able to show "that the officers who executed the search actually relied on the affidavit" to limit their search. *Id.* at 706. Although the record showed that the affiant officer "had her search team read her affidavit, briefed the team on its contents and what items they were to search for, and was present during the search," those facts were insufficient to show that the searching officers "actually relied" on the affidavit to limit the warrant's overbreadth, particularly given the magistrate judge's finding that there was "[n]o evidence * * * that the agents in fact relied on the affidavit to restrict their search." *Id.* (brackets and omissions in original).

We do not find *SDI Future Health, Inc.* sufficiently similar such that we would rely on it as persuasive. In *SDI Future Health, Inc.*, the warrant was fatally overbroad even when construed in conjunction with the affidavit. In other words, the executing officers could not, and did not, reasonably rely on the affidavit to limit the warrant's overbreadth. Here, in contrast, the warrant would have been sufficiently particular under the Fourth Amendment if construed in conjunction the warrant, and the officers *did* limit their search in accordance with the magistrate's probable cause determination by relying on the contents of the affidavit. Again, the fact that the officers did not actually reference the affidavit document during the search is not dispositive; the issue is whether the officers' reliance on the validity of the warrant, though mistaken, was objectively reasonable. *See Luk*, 859 F2d at 677 n 10 (even "the absence of the affidavit at the scene [does not preclude] a finding of good faith"). For those reasons, we do not find *SDI Future Health, Inc.* persuasive.

In conclusion, considering the supporting affidavit in this case as part of the search warrant for defendant's apartment, the warrant met the particularity requirement of Article I, section 9. Additionally, although the warrant was facially invalid under Fourth Amendment law, the good faith exception to the federal exclusionary rule applies. The trial court did not err in denying defendant's motion to suppress the evidence discovered in his apartment pursuant to the warrant. Accordingly, we affirm.

Affirmed.

**POWERS, J.,** concurring.

I fully concur with the majority opinion and, in particular, its adherence to our conclusion in *State v. Mansor*, 279 Or App 778, 381 P3d 930 (2016) (*Mansor I*), *aff'd*, 363 Or 185, 421 P3d 323 (2018), that places the burden on the defendant to establish facts pertaining to the validity of the warrant itself when a defendant challenges the lawfulness of the warrant-based seizure. *See* 323 Or App at 183-85. If, however, we were writing on a clean slate—and if the parties properly engaged in the issue before the trial court and before us—it is unclear to me why the state would not have

the burden in this situation akin to a challenge to the existence of an arrest warrant.

As an initial matter, our prior decision in *Mansor I* speaks directly to that issue and fidelity to *stare decisis* means that we start from the assumption that our prior cases were decided correctly. *See, e.g.*, *State v. Civil*, 283 Or App 395, 415, 388 P3d 1185 (2017) (quoting *Farmers Ins. Co. of Oregon v. Mowry*, 350 Or 686, 698, 261 P3d 1 (2011)). Even more important, however, is that defendant did not preserve a challenge to the burden issue and also did not ask us in his opening brief to revisit the conclusion in *Mansor I* about who has the burden, which generally should be fatal in all respects except, perhaps, in the most extraordinary circumstances. *See John Hyland Const., Inc. v. Williamsen & Bleid, Inc.*, 287 Or App 466, 472-73, 402 P3d 719 (2017) (explaining that the preservation requirement "is a fundamental principle of appellate jurisprudence, serving the important policy goals of fairness to the parties and the efficient administration of justice. * * * [T]he reason for the rule is not merely to promote form over substance but to promote an efficient administration of justice and the saving of judicial time." (Internal quotation marks and citation omitted.)).

In future cases, however, it may be worth examining why the state does not have the burden in this type of situation, just as it does for certain challenges to arrest warrants. For example, we recently concluded in *State v. Perrodin*, 315 Or App 252, 261-63, 500 P3d 704 (2021), that the state has the burden of production when, following evidence discovered after a warrant-based arrest, a defendant moves to suppress on the grounds that the warrant was invalid because it was not supported by an oath or affirmation. That is, when the existence of a valid warrant is at issue, the state has the responsibility for the initial showing to produce a valid warrant, complete with an oath or affirmation.

Here, defendant is in a similar position challenging the existence of a valid search warrant, which in this case is dependent on an affidavit being incorporated to meet the particularity requirement. *Mansor I* places the burden on the defendant to prove that an affidavit was not attached or

not otherwise sufficiently accompanied when the warrant was executed. 279 Or App at 790. Where, like this case, defendant was not even present when the warrant was executed, it is difficult to understand why the defendant is saddled with that initial burden of production at a suppression hearing.

   In my view, we are bound by *Mansor I* and that ends the matter, which is why I fully concur with the majority opinion. In a future case, however, if adequately preserved and presented, I believe it is worth revisiting the question whether a defendant carries the burden of proof to establish that the affidavit should not be considered in evaluating whether a warrant meets the particularity requirement under the state constitution.