Argued and submitted December 7, 2022, conviction on Count 1 reversed and remanded, remanded for resentencing, otherwise affirmed August 16, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*

WILLIAM CHASE HARGROVE,
*Defendant-Appellant.*
Benton County Circuit Court
17CR25379; A173326

536 P3d 612

Defendant appeals from a judgment of conviction for one count of murder, one count of identity theft, and two counts of second-degree theft. He assigns error to the trial court's denial of his motion to suppress based on the validity of various warrants, the trial court's ruling on the admissibility of hearsay evidence, and the jury instructions. *Held*: The Court of Appeals concluded the trial court erred in admitting evidence obtained from the search of defendant's digital devices because the warrants were not sufficiently particular. It further accepted the state's concession that the trial court erred in admitting evidence pursuant to the plain view exception to the warrant requirement, as the exception does not apply to searches of digital devices. The court concluded that the error was not harmless with respect to the murder conviction. The court rejected defendant's remaining assignments of error.

Conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

Matthew J. Donohue, Judge.

Meredith Allen, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

SHORR, P. J.

Defendant appeals from a judgment of conviction for murder (Count 1), ORS 163.115; identity theft (Count 2), ORS 165.800; and two counts of second-degree theft (Counts 3 and 4), ORS 164.045. On appeal, defendant raises 17 assignments of error, relating to the denial of his motion to suppress in which he challenged the validity of various warrants, the admissibility of evidence under a hearsay exception, and the jury instructions. We conclude that the trial court erred in admitting evidence obtained from defendant's digital devices, as raised in defendant's fifth through seventh, thirteenth, and fourteenth assignments of error, and we conclude that the error was not harmless with respect to the murder charge. We reject defendant's first through fourth and eighth through twelfth assignments of error because we conclude that the warrants to search physical locations and obtain evidence from third-party companies were sufficiently particular. We reject defendant's fifteenth assignment of error because the trial court did not err in its evidentiary ruling regarding the limited use of hearsay statements. We reject without discussion defendant's sixteenth and seventeenth assignments of error regarding the jury instructions. We therefore reverse and remand on Count 1.

## BACKGROUND FACTS

Defendant was in a romantic relationship with the victim, A, who had moved from Moscow, Russia, to Corvallis, Oregon in March 2017 to be with defendant and marry him. Simultaneously, defendant was in a tumultuous romantic relationship with a married woman, Chavez. From at least December 2016 through April 2017, defendant was seeing both women and offering each one differing stories about the other.

On April 17, 2017, A's body was discovered in a forested area outside of Alsea, Oregon. The evidence indicated she had been killed by a gunshot wound to the head, and had died within a couple of days prior to the discovery of the body.[1] Trash in the area, particularly a receipt from a fast

---

[1] One of the detectives testified that, based on the condition of the body, A had not died immediately before the body was discovered, but it had not been as many as three to five days. Other evidence indicated that A was seen alive at

food meal, led the investigators to defendant. On April 19, 2017, defendant was interviewed by investigators, both at his home and at the sheriff's station, and he was eventually arrested for the murder. Over the following days, detectives sought and received search warrants for defendant's homes and vehicles, where they discovered a shotgun[2] and ammunition consistent with the murder weapon, defendant's clothing with blood on it, and A's credit cards. Other evidence found at the crime scene was forensically linked to defendant, including a partially full coffee cup with his DNA on it.

Law enforcement also sought and received warrants for defendant's electronic devices, bank account, and digital and social media accounts (including Google, Facebook, Yahoo, and T-Mobile). Cell location data placed his phone in the vicinity of the crime scene on the afternoon of April 16, the presumed date of A's death. Banking data and surveillance video illustrated defendant's money troubles, his presence in the area where the body was found, his withdrawal of money from A's account on the evening of April 16, and his deposit of cash into his own account later that night. Evidence further demonstrated defendant's close romantic relationship with A, including planning a wedding, contrary to his claims during his initial interview with detectives that he barely knew her and had only been on two dates with her.

Detectives also interviewed Chavez, who admitted to meeting defendant on April 16 in the area where the murder occurred, but denied any involvement in the crime. She voluntarily turned over her cell phone for a search. Her phone contained voluminous text messages and emails that she had exchanged with defendant, including his text on April 15 that he would have his relationship situation "permanently solved" by the following evening. A's phone was never recovered.

Defendant was charged with the murder of A, and three additional charges of identity theft and theft for the

---

her gym on April 15 and sent text or Facebook messages during the first part of the day on April 16. The state's theory was that she had died on the afternoon or evening of April 16.

[2] The shotgun belonged to defendant's friend, Thomas. Defendant had borrowed the shotgun weeks earlier and had not returned it to Thomas.

use of her bank cards. At the trial, the state argued that defendant had murdered A in order to resolve his complex relationship issues, then stole her credit cards and withdrew money from her account to pay his car insurance and buy other items. The defense theory was that the police had not done a sufficient investigation to rule out Chavez as the murderer and argued that Chavez had killed A to remove a romantic rival, then threatened defendant to keep him quiet. The defense pointed to evidence that Chavez was also in the area of the murder on the same day as defendant, and to the fact that she had exchanged Facebook messages with another person the week before and the night of April 16, talking about "making a snowman," which they argued was a euphemism for murdering someone.

The jury convicted defendant of all charges. He appeals from the judgment of conviction, raising 17 assignments of error.

### SEARCH WARRANTS FOR DIGITAL DEVICES

The day after defendant was arrested, investigators obtained warrants to search defendant's homes and vehicles. Included in the warrants was authorization to seize and search defendant's digital devices. Defendant filed a motion to suppress evidence obtained from his devices. The trial court held that the following search command was sufficiently specific to satisfy the particularity requirement for warrants: "communications between any and all of the following persons: [A] and [defendant], Michelle Chavez, Kevin Thomas, and/or Rawley Green." The court further held that certain other digital evidence discovered during the forensic search for communications was admissible under the plain view exception to the warrant requirement, allowing the admission of defendant's WhatsApp messages with an unknown person regarding time travel and text messages with a coworker regarding firearms.[3] The WhatsApp

---

[3] The court ruled that the search command allowing for a search of "Items which would tend to show dominion and control of the property searched" was not sufficiently particular to allow for the admission of other evidence outside of communications between the named individuals, and therefore excluded a number of other pieces of digital evidence that were discovered, but did not fall under the plain view exception as the trial court understood it. Neither party has raised any challenge to that ruling.

messages included defendant's queries as to whether time travel was actually possible, and that he would sell his soul to be able to go back to April 16 to stop the day from happening as it did.

In his fifth through seventh, thirteenth, and fourteenth assignments of error, defendant challenges those rulings by the trial court. He asserts that the search command for "communications" was insufficiently particular because it did not include a temporal constraint, and because the warrant allowed for a search across all file types. He further points out that, after the trial court's ruling, we held in *State v. Bock*, 310 Or App 329, 340, 485 P3d 931 (2021), that the plain view exception to the warrant requirement does not apply to searches of digital devices, and therefore the evidence admitted under that theory should have been suppressed.[4]

The state responds that the command to search for communications between the primary subjects of investigation at the time was sufficiently limited in subject matter, and that no temporal limitation was possible. Alternatively, the state argues that any error was harmless because much of the evidence of communications was cumulative of evidence obtained through other sources and ultimately was unlikely to have impacted the verdict given the vast amount of other evidence presented. The state further concedes that the plain view exception does not apply to the communications with other individuals not named in the search command, but argues that the error was similarly harmless.

A search warrant must "'particularly describ[e] the place to be searched, and the person or thing to be seized.'" *State v. Mansor*, 363 Or 185, 212, 421 P3d 323 (2018) (quoting Or Const, Art I, § 9) (brackets in *Mansor*). The warrant must allow the executing officer to identify with reasonable effort the things to be seized for which a magistrate has

---

[4] In assignment of error fourteen, defendant objects to the trial court's admission of a photo of the victim that was attached to an email defendant sent to himself, as improperly admitted under the plain view exception. Our review of the trial court's ruling shows that the trial court admitted the photo as falling under the "communications" command of the search warrant. Regardless, we review the admissibility of all evidence obtained from defendant's devices together.

found probable cause. *Id.* When a search is warranted, a presumption of regularity arises, based on the fact that an independent magistrate has already determined that probable cause exists; therefore, the defendant bears the burden of proving the unlawfulness of a warranted search. *State v. Walker*, 350 Or 540, 553-54, 258 P3d 1228 (2011). We review a trial court's denial of a motion to suppress for errors of law and are bound by the court's factual findings if there is constitutionally sufficient evidence to support them. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). Whether a warrant complies with the particularity requirement of Article I, section 9, of the Oregon Constitution is an issue we review for errors of law. *State v. Savath*, 298 Or App 495, 499, 447 P3d 1, *rev den*, 365 Or 722 (2019).

We begin with the warrant and the authorization to search for any "communications" between the individuals who were the primary focus of the investigation at the time. Under *Mansor*, to satisfy the particularity requirement of Article I, section 9, a warrant to search a digital device "must identify, as specifically as reasonably possible in the circumstances, the information to be searched for, including, if available and relevant, the time period during which the information was created, accessed, or otherwise used." *Mansor*, 363 Or at 187-88.

We conclude that the warrant was insufficiently particular with respect to the information to be searched for.[5] In *State v. Turay*, the Supreme Court recently elaborated on the particularity analysis that is to be performed when evaluating warrants for digital devices and concluded that a search command for "communications" between the main subjects of the investigation was insufficient. *State v. Turay*, 371 Or 128, 152-53, 532 P3d 57 (2023). The court noted that,

---

[5] To the extent defendant challenges the warrant's authorization to search through all data stored in the device or remotely accessible through the device, we conclude that argument is contrary to current caselaw. In *Mansor*, the Supreme Court extensively discussed the nature of digital searches and the difference between those searches and searches of physical spaces. *Mansor*, 363 Or at 197-202. The court noted that because "the location or form of specific information on a computer often cannot be known before the computer is actually examined, examiners conducting a reasonable computer search ordinarily will be permitted to look widely on the computer's hard drive to ensure that all material within the scope of the warrant is found." *Id.* at 199-200.

given what the investigators knew at the time, the warrant could have more specifically described the category and subject matter of the information sought, such as by limiting it to communications involving prostitution-related activities, or communications that related to internet postings or advertisements. *Id.* The court rejected the state's argument that the command "allowed a reasonable degree of certainty as to whether a given piece of data falls within its reach," emphasizing that more is required in the context of a search for digital data "to ensure that the governmental intrusion into a defendant's privacy interests in digital data is as limited 'as reasonably possible under the circumstances[.]'" *Id.* at 153 (quoting *Mansor*, 363 Or at 222).

While we acknowledge that, at the time the warrants were obtained in this matter, there were many unknowns about the nature of the relationships between defendant, A, and Chavez, the command to search for all communications was lacking in specificity. The warrant could have more specifically described the category of information sought as limited to communications regarding the nature of their relationships or conflicts between the parties, communications regarding Thomas's shotgun, or communications regarding the various parties' whereabouts in the days leading up to the murder. As in *Turay*, because the search category did not restrict the search for communications with as much specificity as reasonably possible under the circumstances, it failed to satisfy the particularity requirement. *Turay*, 371 Or at 153.

Given that resolution, there were no valid search commands allowing for inspection of defendant's digital devices, and any evidence obtained therefrom should have been suppressed. We also acknowledge and accept the state's concession that the trial court erred in admitting digital evidence under a plain view rationale. As we held in *Bock*, the breadth of a digital search "renders the plain view doctrine inapplicable," as it would "sanction the sort of general warrant that the plain view doctrine was never meant to authorize." *Bock*, 310 Or App at 340. We thus turn to an assessment of the harmfulness of the error.

In assessing whether a verdict should be affirmed notwithstanding the improper admission of evidence, we consider a single question:

> "Is there little likelihood that the particular error affected the verdict? The correct focus of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling."

*State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). "A criminal defendant who assigns error to the exclusion or admission of evidence 'must establish that the error was not harmless.'" *State v. Gibson*, 338 Or 560, 575-76, 113 P3d 423, *cert den*, 546 US 1044 (2005) (quoting *State v. Lotches*, 331 Or 455, 487, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001)). In making the determination of whether there is little likelihood that a particular error affected the verdict, "we examine the record as a whole and consider the error and the context in which it occurred." *State v. Durando*, 262 Or App 299, 305, 323 P3d 985, *adh'd to as modified on recons*, 264 Or App 289, 331 P3d 1095, *rev den*, 356 Or 400 (2014). In *State v. Carrillo*, 304 Or App 192, 202-06, 466 P3d 1023, *rev den*, 367 Or 220 (2020), we noted a variety of considerations we can take into account in making that assessment, including "any differences between the quality of the erroneously admitted evidence and other evidence admitted on the same issue," "how the parties actually used the challenged evidence at trial," and whether there is other "overwhelming evidence of the charged crimes." However, in conducting such an analysis "'we do not usurp the role of the factfinder and determine if defendant is guilty or reweigh the evidence.'" *State v. Ramirez*, 310 Or App 62, 67, 483 P3d 1232 (2021) (quoting *State v. Zaldana-Mendoza*, 299 Or App 590, 613, 450 P3d 983 (2019)).

We begin with the messages about time travel, because they are dispositive. In the early hours of April 18, the day after A's body was discovered and the day before defendant was contacted by the police, defendant exchanged text messages with an unknown individual, labeled only as

"786," via WhatsApp, a messaging app, where he was seeking information about time travel:

>    "[Defendant]:    Hello. I need help and I am truly hoping you can enlighten me.
>
>    "* * * * *
>
>    "[Defendant]:    I need to learn about time travel. I need to correct a horrible mistake.
>
>    "[Defendant]:    Please. I have to fix this.
>
>    "* * * * *
>
>    "[786]:    tell me problem
>
>    "[Defendant]: April 16th my best friend made a mistake. I want to go back and stop the situation from arising.
>
>    "[786]:    ok
>
>    "[786]:    you send full problem
>
>    "[786]:    what do you want
>
>    "[Defendant]:    I want to go back to April 16, 2017, at 11:30 in the morning to stop the day from happening as it did. I want to convince myself we need to stay home so nothing bad happens. I want to go back to keep from losing the women that should be my wife."

Over the next 20 hours defendant sent four more messages to 786, without receiving a response:

>    "[Defendant]:    Can it be done?
>
>    "[Defendant]:    Please..
>
>    "[Defendant]:    I'd honestly sell my soul.
>
>    "[Defendant]:    Please?"

The state argues that these messages, while indicating defendant's remorse, were cumulative of other evidence that was more direct evidence of his guilty conscience, including testimony that on the suspected day of the murder he had appeared distraught and was crying in a convenience store, stated that his girlfriend had left him, and had become intoxicated that night and cried to his friends, calling himself "a piece of shit" and a "terrible person." The state asserts that nothing in the messages with 786 was

specific about what happened on the day in question and therefore was not overly probative in disputing defendant's explanation of his mood (that he was sad because A had left him), or in disproving defendant's trial theory that Chavez had murdered A.

Defendant argues that this evidence was important to the state's circumstantial case and asserts that it was not merely cumulative; rather, defendant argues that the evidence consisted of his direct words, unfiltered through third party testimony, and was "a more powerful expression of remorse—the desire to do the impossible—than the depressive statements and self-hatred identified by the state."

We cannot conclude that the erroneous admission of this evidence was harmless with respect to the murder charge. Although other evidence demonstrated defendant's low mood and remorse during the evening of April 16, this was a far more direct and explicit indication of his perceived level of responsibility related to the events of that particular day. His entire statement that he would sell his soul to go back in time to change the events of that day is particularly powerful evidence of his level of remorse and is qualitatively different from and not cumulative of other evidence in the record. Furthermore, the prosecutors mentioned the messages in their opening and closing statements. In closing, the prosecutor emphasized that the time defendant wished to return to, 11:30 a.m., was well before Chavez had met him in Alsea, implying that the decision point that led to the loss of A was when defendant chose to leave the house with A and drive her to the woods. Defense counsel also mentioned the messages in his closing argument, asserting that they were evidence of Chavez's culpability for the murder, implying that she was the "best friend" who had made a mistake. That suggests that the defense considered the messages significant enough to warrant a response and reframing of the state's interpretation.

Despite the fact that the messages were just a part of a four-week trial, which included presentations of forensic evidence, cell phone location data, suspicious text messages, and defendant's damning interview with the police, our assessment of the harmfulness of evidence is not rooted

in what we, as factfinder, would have found persuasive. *Ramirez*, 310 Or App at 68. We cannot confidently say that the messages had little likelihood of affecting the verdict on the murder charge, particularly given the circumstantial nature of the state's case.

We cannot say the same with respect to the theft and identity theft convictions. Defendant advances no argument regarding how the admission of the WhatsApp messages was harmful to his conviction on those charges. The record contains unchallenged evidence of defendant using A's bank card to make withdrawals from her account on the evening of April 16, including video surveillance of defendant making ATM transactions that corresponded with A's banking records. The WhatsApp messages did not have any tendency to affect the convictions on the theft and identity theft counts.

With respect to the remainder of the evidence obtained from the search of defendant's phone, we note that defendant has not identified any specific pieces of evidence that he contends were wrongly admitted and has made no effort to explain how any particular exhibit may have affected the verdict on any count. ORAP 5.45(4)(a)(iii) ("If an assignment of error challenges an evidentiary ruling, the assignment of error must quote or summarize the evidence that appellant believes was erroneously admitted or excluded."); *see also Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself."). Defendant asserts only that the erroneous ruling regarding the admissibility of communications between the primary parties "resulted in the admission of multiple pieces of communications evidence that was important to the state's circumstantial case, including evidence revealing the length and extent of defendant's romantic relationship with [A], his rocky relationship with Chavez, and his knowledge and handling of firearms." However, because we find the admission of the WhatsApp messages to be harmful on its own with respect to the conviction on the murder charge,

defendant will have the opportunity on remand to identify specific pieces of evidence that were obtained pursuant to the improper search of his digital devices.[6]

SEARCH WARRANTS FOR PHYSICAL LOCATIONS

We turn to other issues, including the search warrants for the various physical locations, because this matter will be remanded to the trial court for further proceedings. The warrants investigators obtained the day after defendant was arrested authorized searches of defendant's apartment in Corvallis, Chavez's home in Albany (where defendant also lived part-time), three vehicles belonging to defendant and Chavez, an evidence tub at the Benton County Jail bearing defendant's name, and defendant's shoes (which were at that point in an evidence locker at the sheriff's office). The warrants authorized the officers to "SEARCH FOR, SEIZE, AND/OR FORENSICALLY ANALYZE any and all evidence of the crime of Murder, ORS 163.115," then listed a number of categories of evidence sought, including, among other things, shoes, clothing, firearms, ammunition, and digital devices.

In his first through fourth assignments of error, defendant assigns error to the trial court's denial of his motion to suppress physical evidence recovered pursuant to those warrants. He asserts that the warrants lacked particularity because they authorized a search for all firearms, despite law enforcement knowing that the murder weapon was a shotgun; and because they allowed for an unlimited search for evidence of "murder" without qualification by the identity of the victim or suspects. The state maintains that the warrants were valid; and that even if the challenged commands were overbroad, any error was harmless, as the search commands were severable from the remainder of the warrant.

The parties agree that this issue was preserved through defendant's pre-trial motion to suppress.[7] As noted

_____

[6] As the state points out, much of the evidence of defendant's communications with others that was presented at the trial was derived from sources other than defendant's devices. Defendant has raised no challenge to the admissibility of evidence obtained from other sources.

[7] Before the trial court, defendant also argued that the warrants lacked probable cause. He does not advance that argument on appeal.

above, a search warrant must "'particularly describ[e] the place to be searched, and the person or thing to be seized.'" *Mansor*, 363 Or at 212 (quoting Or Const, Art I, § 9) (brackets in *Mansor*). The warrant must allow the executing officer to identify with reasonable effort the things to be seized for which a magistrate has found probable cause. *Id.* Whether a warrant complies with the particularity requirement with respect to the things to be seized "is highly fact dependent and eludes a single, concrete articulation." *Id.*

Defendant's challenge to the warrants in question is narrow. He asserts that the search command for "firearms" was overbroad in light of the fact that the investigators had determined that the murder weapon likely was a shotgun. However, the affidavit in support of the warrants did not state conclusively that a shotgun had been used, only that A had been "shot in the back of the head with a shotgun round" and that it had "likely" been "fired from a 12-gauge shotgun."[8] Under the circumstances of the current state of the investigation, a search for any firearms was not overbroad.

Defendant's additional argument, that the warrants were invalid based on the general authorization to search for evidence related to the crime of murder, without identifying the specific victim, is without merit. The particularity requirement mandates that the warrant allow the executing officer to identify with reasonable effort the things to be seized. The addition of the name of the victim would not have been of assistance to the investigators in determining the things to be seized; the list of specific categories of evidence provided adequate direction to the executing officers.[9]

## THIRD-PARTY WARRANTS

In his eighth through twelfth assignments of error, defendant challenges the trial court's ruling denying his motion to suppress evidence seized from Umpqua Bank, T-Mobile, Google, Yahoo, and Facebook. Investigators obtained

---

[8] The trial court made factual findings consistent with the affidavit that supported issuance of the warrants.

[9] For example, inclusion of the victim's name would not have changed which shoes, clothing, biological evidence, or digital devices the officers could seize during the searches.

warrants in April 2017 for each company's records related to defendant extending back to the previous April.[10] In his motion to suppress, defendant argued that the warrants were insufficiently particular under *Mansor*, specifically with respect to the temporal limitations on the information sought. The trial court ruled that the standard set forth in *Mansor* did not apply, and in any event, the warrants for each set of records obtained were sufficiently particular. The court noted that there were many "unknowns" about the nature and duration of defendant's relationships with A and Chavez, and acknowledged that banking records were necessary to establish defendant's habits and identify any changes to them. Given the totality of the circumstances and the investigatory nature of the case at the time the warrants were issued, the trial court concluded that a one-year look-back period was reasonable.

On appeal, defendant renews his argument that the standard for particularity of warrants set forth in *Mansor* for searching digital devices should also apply to warranted searches of records maintained by third-party companies. He asserts that banking and social media accounts can reveal information about a wide variety of private subject matters in the same way that a search of a digital device does. However, defendant has not sufficiently developed this argument. Defendant fails to explain with any specificity how these third-party account records are analogous to the "unprecedented capacity" of electronic devices to "collect and store a diverse and vast array of personal information," as identified in *Mansor*, 363 Or at 208. The extent of defendant's argument is that courts "should" treat this kind of information similarly. Without further development of the argument, we decline to take such a significant step in expanding the reach of *Mansor*.

Thus, the validity of the warrants is a matter of whether the warrants "describe, with particularity, the place to be searched and the persons or things to be seized." *State v. Rose*, 264 Or App 95, 106, 330 P3d 680, *rev den*, 356

---

[10] The warrants also included requests for records related to other key parties in the investigation, including A, Chavez, and Thomas. Defendant conceded at the hearing on his motion to suppress that he was not challenging the searches of those records, as he had no privacy interest in anyone else's accounts.

Or 400 (2014). "'The objective is that the search be as precise as the circumstances allow and that undue rummaging be avoided.'" *Id.* at 107 (quoting *State v. Massey*, 40 Or App 211, 214, 594 P2d 1274, *rev den*, 289 Or 409 (1979)). As noted above, the defendant bears the burden of proving the unlawfulness of a warranted search. *Walker*, 350 Or at 553-54.

The investigators here limited the information sought to roughly one year preceding the murder. Defendant has not made any argument as to why that was an unreasonable time limitation, other than to assert that it could have been narrower. Considering the totality of the circumstances, including that defendant had been in a romantic relationship with A since some point prior to December 2016 when she first visited Oregon from Moscow, and given the number of unknown factors about defendant's relationships with A and Chavez, we conclude that defendant has not met his burden of proving that the warranted search was unlawful. The one-year time frame was reasonable, and the warrants were sufficiently particular given the state of the investigation at the time.

## HEARSAY TESTIMONY

In his fifteenth assignment of error, defendant argues that the trial court improperly excluded third-party testimony that should have been admitted under OEC 803(3) as a state of mind exception to the hearsay rule. We conclude the trial court did not err.

Hearsay is an out of court statement "offered in evidence to prove the truth of the matter asserted." OEC 801(3). Hearsay is not admissible except as provided in a number of exceptions or as otherwise provided by law. OEC 802. The following is one of those exceptions:

> "A statement of the declarant's then existing state of mind, emotion, sensation or physical condition, such as intent, plan, motive, design, mental feeling, pain or bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of the declarant's will."

OEC 803(3).

During the trial, defendant sought to introduce testimony from a witness, Netty Randall, who had recently come forward with information about Chavez. Defense counsel indicated that Randall was prepared to testify about a cab ride she took with Chavez, during which Chavez broke down crying, stating she was unable to sleep at night, was extremely stressed out, and that every time she closed her eyes she could see "that dead bitch's face" (referring to A). Defendant argued that the evidence was admissible under OEC 803(3), as it demonstrated Chavez's state of mind at the time that she made the statements. The state argued that the statements about Chavez being stressed and tired would qualify under the state of mind exception but asserted that the reasons behind that state of mind (seeing A's face whenever she closed her eyes) was not included as part of her state of mind.

The trial court agreed with the state, that the first portion was admissible under OEC 803(3), then made the following remarks about the "explanatory statement" about seeing A's face:

> "[I]f you wanted Ms. Randall to testify to that the next question would be would—you know, would a limiting instruction that that part of the statement can only be offered as a statement by Ms. Chavez as a guess as to why she's feeling that way but can't be offered to prove that she was actually seeing that woman's face in sleep but, again, was just a contextual statement made as part of that present emotional state, but I don't think it can be offered for the truth of the matter asserted, that she was actually seeing her face."

Defense counsel then changed tactics and argued that he should be allowed to present the evidence for impeachment purposes against Chavez, an argument the trial court rejected.[11] Randall was never called as a witness.

We conclude that the trial court did not err in ruling that the testimony was admissible subject to a limiting instruction that it could only be used as evidence of why Chavez thought she was feeling the way she was. The purpose for which a proponent intends to use an out of court statement matters. In *State v. Bement*, the Supreme Court

---

[11] Defendant does not challenge that ruling on appeal.

engaged in an extensive discussion about the use of out of court statements to prove a declarant's state of mind versus using the statements to prove the truth of the matter asserted, reaching the following conclusion about the limitation on use of statements of memory or belief:

> "We therefore apply the limit to the state-of-mind exception by focusing on what the proponent is using the statement to prove and not by focusing on whether the statement directly asserts a state of mind or directly asserts a historical fact. *See* [Mueller & Kirkpatrick, 4 *Federal Evidence* § 8:73 at 659 (4th ed 2013)] ('Use counts more than form and substance because fact-laden statements usually shed light on state of mind, and statements describing mental conditions usually suggest factual inferences.'). The limit applies if the proponent is offering the statement of belief to prove the truth of the historical facts that the declarant believed, but not if the proponent is trying to prove the declarant's state of mind."

*State v. Bement*, 363 Or 760, 778, 429 P3d 715 (2018). The court went on to note the importance of limiting instructions in such situations:

> "The state raises concerns about a factfinder's ability to distinguish between those uses. But those concerns do not justify the state's narrow reading of the state-of-mind exception. Instead, a court may appropriately address those concerns by providing limiting instructions, scrutinizing the relevance of the statements, and weighing the probative value of the statements against the risk of prejudicial misuse under OEC 403."

*Id.* at 778-79.

The trial court's ruling was precisely in line with that standard. The court stated that the statement about Chavez seeing "that dead bitch's face" was admissible as evidence of her state of mind, but was not admissible to prove that Chavez was actually seeing A's face anytime she closed her eyes, and could be admitted with a limiting instruction clarifying that appropriate use. In his reply brief, defendant agrees that the evidence was not admissible to show that Chavez *actually* saw A's face when she closed her eyes.

Defendant's assertion that the court excluded the evidence is not consistent with what occurred.[12]

## CONCLUSION

In summary, we accept the state's concession that the state improperly obtained evidence under a "plain view" exception to the warrant requirement that is not an available exception in the circumstances of the state's search of defendant's digital devices. We conclude that error was not harmless with respect to the murder charge. We further conclude that the trial court erred in admitting evidence obtained from defendant's digital devices because the warrant was not sufficiently particular. We reject defendant's assignments of error challenging the searches of physical locations and obtaining evidence from third-party companies because the warrants were sufficiently particular. We conclude that the trial court did not err in its evidentiary ruling regarding the limited use of certain hearsay statements.

Conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

---

[12] To the extent the parties raise additional issues regarding preservation and the proper procedure for raising the possibility of a limiting instruction, we conclude it is unnecessary to reach those issues. Because this case is being reversed on other bases, this issue may arise in a different posture on remand. Defendant will have the opportunity to decide whether to offer this evidence again, and the parties may raise additional arguments regarding its use and the proper wording of any limiting instruction.