108 September 18, 2024 No. 661

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEPHEN A GOODE,
*Defendant-Appellant.*

Deschutes County Circuit Court
19CR52839; A179474

Walter Randolph Miller, Jr., Judge.

Submitted June 17, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Meredith Allen, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jennifer S. Lloyd, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Reversed and remanded for entry of a judgment that omits terms related to defendant's conditions of incarceration; otherwise affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for first-degree sodomy, first-degree sexual abuse, strangulation, and menacing. He raises six assignments of error. In his first, he challenges the denial of his motion to suppress evidence found after officers executed a warrant on defendant's Facebook account for defendant's Facebook Messenger messages. In his second and third assignments of error, he challenges the admission of evidence to prove defendant's sexual predisposition towards A. In his fourth and fifth assignments of error, he asserts that the trial court abused its discretion when it denied two motions for mistrial. In his sixth and final assignment of error, defendant argues that the trial court committed plain error by including "sentence instructions" to the Department of Corrections in the judgment.

Beginning with the final claim of error, the state concedes that the trial court plainly erred in including a list of "sentence instructions" in the judgment related to defendant's conditions of incarceration. We agree and exercise our discretion to correct the error. *See State v. Langmayer*, 239 Or App 600, 601, 244 P3d 894 (2010) (trial court lacks authority to impose no-contact order as condition of incarceration); *State v. Hall*, 282 Or App 9, 11, 385 P3d 1225 (2016), *rev den*, 360 Or 752 (2017) (exercising discretion to correct plainly erroneous no-contact provision as condition of incarceration). We therefore reverse and remand for entry of a judgment that omits the challenged list of sentence instructions. *Hall*, 282 Or App at 11.

We otherwise affirm. As we explain below, the trial court correctly denied defendant's motion to suppress. The evidence that defendant challenges in his second and third assignments of error, related to his sexual interest in A, was admissible for a non-propensity purpose. Finally, we conclude that the trial court properly exercised its discretion in denying defendant's motions for mistrial and concluding instead that measures short of a mistrial were adequate.

## I.   MOTION TO SUPPRESS

Defendant's first assignment of error challenges evidence found in defendant's Facebook messaging inbox.

By way of brief introduction (a lengthier factual recitation follows), a magistrate issued a warrant directing officers to search and seize defendant's Facebook account records.[1] The warrant limited the responsive information to that involving communication of or about sexual contact between defendant and others and defendant and A. It allowed a search for those categories of information from May 2012 through the time that the magistrate signed the warrant in September 2019. When officers executed the warrant, they found Facebook messages between defendant and A in which defendant communicated a sexual interest in A. Defendant moved to suppress the messages, arguing that the warrant was insufficiently particular and lacked probable cause. The trial court denied the motion, a ruling to which defendant now assigns error.

We begin with what is not at issue. Defendant argues, and the state does not dispute, that defendant had a protected interest in the contents of his Facebook messages. The state argues, and defendant does not dispute, that the heightened particularity requirement set out in *State v. Mansor*, 363 Or 185, 216, 421 P3d 323 (2018) (*Mansor II*), does not apply when a defendant is challenging a warrant directed at records held by a third party rather than at a person's personal electronic devices. *See State v. Hargrove*, 327 Or App 437, 451-52, 536 P3d 612 (2023) (reviewing a challenge to a warrant for records held by third parties, including Facebook, under the standard legal framework for assessing the lawfulness of a warrant in light of the defendant's failure to develop an argument to the contrary).

In light of what is not at issue, then, we are left with the standard framework for assessing the validity of a warrant, namely, "whether the warrant[] describe[s], with particularity, the place to be searched and the persons or things to be seized" and whether the warrant was supported by probable cause. *Id.* (internal quotation marks omitted). Whether a warrant complies with the particularity requirement with respect to the things to be seized "is highly fact

---

[1] The only evidence that the state intended to use against defendant involved the Facebook messages, and the parties confine their arguments to those messages. The opinion is thus limited to that category of information.

dependent and eludes a single, concrete articulation." *Id.* at 450 (internal quotation marks omitted).

Given the fact-bound nature of the issue, we turn to the facts as described in the warrant's supporting affidavit. A is defendant's niece. In 2019, she disclosed that defendant had sexually assaulted her in June 2018, while they were in Bend. She also disclosed an earlier sexual assault that occurred in 2012, while the family was visiting the Philippines. During an interview with an officer, Skelton, A showed officers text and Facebook messages that defendant had sent her between July 2018 and March 2019 in which he expressed his attraction to her. In an interview with Skelton, defendant acknowledged communicating with A on Facebook—specifically a message that he "would not have sex with her"—and stated that that message, as well as other messages, were still on Facebook.

Skelton then sought a warrant to search defendant's Facebook records. His affidavit began by asserting that there was probable cause to believe that defendant had committed first-degree sexual abuse and first-degree sodomy in Deschutes County in 2018. Skelton detailed the investigation to date (including A's and defendant's statements about Facebook messaging), and he explained that Facebook users can use private messaging on Facebook to communicate with other users. The Facebook account's inbox then stores copies of the messages. Skelton thus averred that defendant's Facebook account would likely contain that material. He also explained that Facebook uses the term "Neoprint" to describe an expanded view of the user's profile that can include a broad range of information from the profile, including links to videos, photographs, notes, wall postings, groups and networks, and information about the user's access and use of Facebook. Skelton explained that the internet protocol logs for a given user may also contain "information about the actions taken by [a] user." Other Facebook features include a photos application, where a user can upload albums and photos (a user's "photo print"), and Facebook Notes, which is a feature that users can use to write and post notes or personal blogs.

He also explained that, in his training and experience, people suspected of committing crimes, including

sodomy and sexual abuse, "communicate with friends, wit-
nesses, co-conspirators and victims prior to and after the
crimes are committed." He explained that the "content of
private messages sent on Facebook.com are retained in the
inbox of the account holder."

Skelton thus requested a warrant to search defen-
dant's Facebook account and asked that the evidence be "in
the form of, but not limited to" a list of items from "05/01/2012
to present":

- User contact information;

- User neoprint;

- User photoprint, including the photographs that defen-
  dant had uploaded;

- Group contact and profile information; and

- "Private messaging inbox (deleted or currently in the
  inbox) showing messages sent and received."

The affidavit then set forth Skelton's request that
the "[e]vidence shall be in the form of * * * [a]ny and all text
messages, picture messages, multimedia messages, chats,
[and] emails" that defendant either possessed or had shared
and that "constitute[ed] communication about or memori-
alization of sexual contact and sexual relations between"
defendant and A. That evidence was to include "discussion
of past sexual contact, as well as solicitation of sexual con-
tact and sexual intercourse with [A], as well as communica-
tion between [defendant] and others involving the sodomy
and sexual abuse" of A.[2]

Lastly, Skelton stated that the search and analysis
"will be limited to evidence of the crimes of sodomy in the
first degree and sexual abuse in the first degree," com-
mitted in Deschutes County, and "limited to the dates of

---

[2] The inclusion of language related to "text messages" and "emails" is likely
because in the same affidavit, Skelton also sought a warrant to search defen-
dant's cell phone. However, the warrant itself included only a command to search
and seize the Facebook records and not defendant's cell phone. Below and on
appeal, defendant did not argue that that particular paragraph would only apply
to limit any command in the warrant related to the cell phone but not to his
Facebook messaging inbox. Thus, we do not discuss the cell phone or portions of
the affidavit relating to it further.

May 1, 2012 through present." He ended by asking the court to issue a search warrant authorizing him to search for evidence of those two crimes "at the said location and any other means, fruits, instrumentalities and evidence of said crime."

A magistrate authorized the warrant to search defendant's Facebook records. The magistrate concluded that "[u]pon information given under oath to me by an affidavit signed and sworn" by Skelton, there was probable cause to believe that the crimes of first-degree sodomy and sexual abuse had been committed and ordered the search, seizure, and analysis of "all" information related to defendant's Facebook account. The warrant largely mirrored the affidavit, granting wholesale and verbatim the list of items that Skelton sought as related to the Facebook records, *see* 335 Or App at 113, including "all information related to" defendant's Facebook account, including the "[p]rivate messaging inbox (deleted or currently in the inbox) showing messages sent and received." The warrant granted a search of "[a]ny and all text messages, picture messages, multimedia messages, chats, [and] emails" that defendant possessed or shared with others "about or memorialization of sexual contact and sexual relations between" defendant and A, including discussion of past sexual contact, solicitation of sexual contact, and "communication between [defendant] and others involving the sodomy and sexual abuse of [A]."

The warrant ended, consistent with Skelton's affidavit and request, by providing that "search and analysis of these items will be limited to evidence of the crimes of sodomy in the first degree and sexual abuse in the first degree, committed and triable in Deschutes County" and "limited to the dates of 05/01/2012 through present," as well as any other "means, instrumentalities, fruits and evidence of" those crimes.

When officers executed the warrant, they found messages in defendant's Facebook account between defendant and A in which, among other things, defendant told A that she was "the prettiest" and admitted having "a huge crush" on her, and A asked defendant to stop "telling me gross stuff." The messages were sent between March 2018

and July 2018, shortly before and shortly after the sexual assault in Bend.

As noted above, defendant moved to suppress that evidence. He argued that the warrant was insufficiently particular because it authorized a "broad search of, essentially" everything without "limitations or parameters." Relatedly, he argued that the court could not consider the affidavit in assessing whether the warrant was sufficiently particular because there was no indication that the affidavit was attached to or incorporated into the warrant. He also argued that the warranted search was overbroad because it authorized a search beginning in 2012, a date that was "arbitrary." And finally, he asserted that the affidavit failed to state probable cause for the two crimes.

The state in response argued that, although the warrant was broad "at first glance," the warrant contained a paragraph that "is specifically requesting Facebook messages between *** defendant and [A]. So it has been limited to *** defendant's specific Facebook account to these specific communications within this specific time frame[.]" The state also noted that the warrant was "again further limited to *** some type of sexual contact—or conduct." In reply, defendant again argued that the affidavit was not incorporated into the warrant and that the time frame was overly broad.

The trial court denied the motion. It concluded that defendant had used Facebook "as a conduit for communication relevant to the charges" and that the warrant was supported by probable cause. In terms of specificity, the court agreed that the request for "any and all" messages "appears to be very broad," but it went on to find that "really, the request is much more targeted. It's much more refined and it limits the ask in all these situations really to the communication between *** defendant and the alleged victim," as well as "communication between [defendant] and others involving the sodomy and sexual abuse" of A. The court concluded that the timeframe was not overbroad, inasmuch as A "beg[an] the narrative of sexual abuse" by defendant in 2012.

On appeal, defendant reprises his arguments that the warrant was insufficiently particular and overbroad. To

resolve his claim of error, "we look at the totality of the circumstances presented in the affidavit, * * * and we resolve doubtful or marginal cases in favor of the preference for warrants[.]" *State v. Miser*, 303 Or App 347, 352, 463 P3d 599, *rev den*, 366 Or 827 (2020) (internal quotation marks and citations omitted). When a search is warranted, a presumption of regularity arises, based on the fact that an independent magistrate has already determined that probable cause exists; therefore, the defendant bears the burden of proving the unlawfulness of a warranted search. *State v. Walker*, 350 Or 540, 553-54, 258 P3d 1228 (2011). We review a trial court's denial of a motion to suppress for errors of law and are bound by the court's factual findings if there is constitutionally sufficient evidence to support them. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). Whether a warrant complies with the particularity requirement of Article 1, section 9, of the Oregon Constitution is an issue we review for errors of law. *State v. Savath*, 298 Or App 495, 499, 447 P3d 1, *rev den*, 365 Or 722 (2019).

A.    *The warrant was sufficiently particular.*

We begin with defendant's argument that the warrant was insufficiently particular. The purpose of the particularity requirement is to "guide the officer to the thing intended to be seized and to minimize the danger of unwarranted invasion of privacy by unauthorized seizures." *State v. Tidyman*, 30 Or App 537, 542-43, 568 P2d 666, *rev den*, 280 Or 683 (1977). "The objective is that the search be as precise as the circumstances allow and that undue rummaging be avoided." *State v. Massey*, 40 Or App 211, 214, 594 P2d 1274, *rev den*, 287 Or 409 (1979). The particularity requirement consists of two distinct concepts: specificity and overbreadth. *State v. Friddle*, 281 Or App 130, 137, 381 P3d 979 (2016). A warrant must be specific enough to allow an officer, with reasonable effort, to identify the place to be searched and the items to be seized. *State v. Blackburn/Barber*, 266 Or 28, 34-35, 511 P2d 381 (1973). The warrant also may not authorize a search broader than its supporting materials provide probable cause to justify. *State v. Reid*, 319 Or 65, 71, 872 P2d 416 (1994).

Because defendant bears the burden to prove that the warrant was not sufficiently particular, we begin with

defendant's arguments. He raises three primary points as to why the warrant is insufficiently particular: (1) the warrant was not sufficiently specific because it allowed officers to access all of defendant's messages in his private messaging inbox, which in turn allowed them "to rummage at will through the private areas of defendant's Facebook account"; (2) the warrant was overbroad, as it encompassed a time period going back to 2012; and (3) we cannot resort to the affidavit to fix either infirmity because the affidavit was not incorporated into the warrant.

### 1. *Incorporation of the affidavit*

We begin with defendant's incorporation argument, since the answer to that issue frames the information that we can consider in the remaining analysis. The purpose of particularity can be served if "some other document, such as a supporting search warrant affidavit, limits the officers' search to" the specific place that was authorized by the magistrate's probable cause determination. *State v. Breedwell*, 323 Or App 172, 181, 522 P3d 876 (2022), *rev den*, 371 Or 106 (2023). The "defendant carries the burden of proof to establish that the affidavit should not be considered in evaluating the warrant's particularity." *Id.* at 184; *see State v. Mansor*, 279 Or App 778, 790, 381 P3d 930 (2016) (*Mansor I*), *aff'd*, 363 Or 185, 421 P3d 323 (2018) (*Mansor II*) (same). For a defendant to establish that an affidavit cannot be considered in construing the warrant that it supports, the defendant must "show that, under the totality of the circumstances, there was not a sufficient connection between the warrant and the affidavit for the executing officers to have reasonably believed that the warrant and affidavit were functionally one document." *Breedwell*, 323 Or App at 188. Evidence that the affidavit was physically attached to the warrant or that the warrant expressly incorporated the affidavit are both relevant. *Id.* at 188-90.

Here, defendant argues that we cannot consider the affidavit in the particularity analysis because "there is no indication" that it was attached or incorporated into the warrant. We disagree. As in *Mansor I*, the warrant referenced the affidavit when it stated that the "affidavit [was] signed and sworn to by" Skelton. Furthermore, like in *Mansor*

*I*, defendant adduced no proof at the suppression hearing that the affidavit was not attached to the warrant. *See* 279 Or App at 790 (noting that the defendant bore the burden of establishing facts relating to his challenge to the validity of the warrant and "[w]hether [the] affidavit was attached to, or otherwise sufficiently accompanied, the warrant when it was executed was such a fact"). Defendant's counsel argued that the affidavit was not incorporated, but he offered no evidence as to that. *See id.* (the defendant adduced "*no* proof on that matter at the suppression hearing—and, thus, failed to meet that burden" (emphasis in original)). We therefore reject defendant's threshold argument that the affidavit was not incorporated into the warrant.

### 2.  *Specificity*

We next consider defendant's argument that the warrant lacked specificity. We conclude that defendant failed to carry his burden to show that the warrant was inadequately specific. At the outset, we note that defendant's arguments have shifted on appeal. Below, he argued that the warrant was insufficiently specific because the warrant contained no limits or parameters. In rejecting that argument, the court noted that the warrant did in fact contain such limitations, pointing to the paragraph that limited the search for information in various types of messages possessed by defendant, shared by defendant, and that constituted communication about sexual contact between defendant and A. Neither party, nor the court, differentiated between the paragraph that permitted searching defendant's "private messaging inbox" and the paragraph that followed containing the limiting provision to search various types of messages, including text messages, picture messages, and multimedia messages. On appeal, defendant appears to now contend that the warrant's reference to "private messaging inbox" is a search authorization separate and apart from the paragraph that follows it and that refers to all kinds of messages. Framed slightly differently, defendant now contends that the limitation in the paragraph following the reference to defendant's messaging inbox does not, in fact, limit the search of the messaging inbox. Given that no party below made that differentiation and given that the court expressly ruled that the limitations that referred to

a broad category of messages encompassed the Facebook messages that defendant argues should be suppressed, we decline defendant's invitation to conclude that the limitation does *not* apply to defendant's Facebook messaging inbox.

So framed, we conclude that the warrant and affidavit were sufficiently specific. To be sure, as defendant notes, the threshold authorization to search "all information" related to defendant's Facebook account is broad. But, as the trial court noted, other parts of the warrant narrow the breadth of that command. After granting the request to search specific items, including defendant's private messaging inbox, the warrant provided that "any and all *** messages" to which the warrant referred must be either (1) those "constituting communication about or memorialization of sexual contact and sexual relations" between defendant and A, including "[d]iscussion of past sexual contact, as well as solicitation of sexual contact, sexual conduct and sexual intercourse" with A, or (2) "communication between [defendant] and others involving the sodomy and sexual abuse" of A. It is a fair reading of the warrant, as the trial court concluded, that that limitation, which applies to any and all messages of various forms, specified and narrowed the evidence for which police were authorized to search. *State v. Wilson*, 178 Or App 163, 167, 35 P3d 1111 (2001) (reviewing courts must read the warrant in a "commonsense, nontechnical and realistic fashion").

Additionally, the final paragraph also limits the scope of the search, stating "search and analysis of these items will be limited to evidence of the crimes of sodomy in the first degree and sexual abuse in the first degree, committed and triable in Deschutes County." That provision refers to all of the evidence sought in the warrant—"these items"—necessarily including defendant's private Facebook messaging inbox. *Cf. Savath*, 298 Or App at 501-02 (where the only information related to the alleged criminal conduct was "related to controlled substances offenses," warrant was insufficiently particular).

The affidavit echoes those limitations. It seeks to search the same 10 items of communications and provides that the evidence "shall be in the form" of messages that relate to sexual contact between defendant and A or between defendant

and others. And it concludes with the same limitation as the warrant—*i.e.*, that the search and analysis of "these items" will be limited to evidence of the crimes specifically named.

In sum, the warrant contains two provisions that limit the breadth of the warrant to specific categories of communications and specific criminal acts. The affidavit does as well. Reading the warrant in a "commonsense, nontechnical and realistic fashion," *Wilson*, 178 Or App at 167, the trial court correctly concluded that the warrant was sufficiently particular.

### 3. *Overbreadth*

Defendant also contends that the warrant's date range, from 2012 to the present, was overbroad because "nothing about the commission of a crime in 2012" in another country (that is, the assault that the victim described as taking place during the trip to the Philippines) "justifies a search for evidence of a crime committed in 2018." At best, defendant contends, that request would serve only to seek inadmissible evidence of prior bad acts.[3] We disagree. Evidence is the proper object of a search warrant as long as there is "'a nexus *** between the item to be seized and criminal behavior. *** [P]robable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction.'" *State v. Maxfield*, 134 Or App 542, 544, 896 P2d 581 (1995) (quoting *Warden v. Hayden*, 387 US 294, 307, 87 S Ct 1642, 18 L Ed 2d 782 (1967)). Here, as the trial court noted, any evidence relating to the 2012 sexual assault could be probative of the charges the police were investigating in 2018. *See State v. McKay*, 309 Or 305, 308, 787 P2d 479 (1990) (evidence of prior uncharged sexual misconduct involving the same victim was admissible in sexual abuse case). The court thus did not err in rejecting defendant's arguments that the warrant was overbroad.

### B.   *The warrant was supported by probable cause.*

Lastly, defendant argues that the warrant was not supported by probable cause. In defendant's view, the

---

[3] Defendant does not raise any argument about the sufficiency of the affidavit to support the conclusion that defendant's Facebook messaging inbox would contain messages dating back to 2012 that related to sexual abuse of A.

evidence of the messages between defendant and A "[does] not make it probable that defendant committed forcible sodomy and sexual abuse" against A, and thus the affidavit did not establish probable cause.

We disagree. Here, the facts in the affidavit include A's disclosure that defendant had sexually assaulted her; that defendant sent "text messages *** and Facebook messages" to A around the time of the assault in which defendant expressed a sexual interest in A; that defendant told A over Facebook Messenger that "he would not have sex with her" and that he "still has th[o]se messages on Facebook"; and that he "did believe that [A] wanted to have sex with him." Based on that information, there was probable cause that seizable evidence—particularly evidence of defendant's sexual predisposition towards A—would be found in the records of defendant's Facebook account. Framed slightly differently, evidence that defendant expressed a sexual interest in A around the time of the alleged assault is relevant to the charges and would likely aid the prosecution in convicting defendant. *Maxfield*, 134 Or App at 544 ("[P]robable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." (Internal quotation marks and citation omitted.)).

## II.  ADMISSION OF DEFENDANT'S STATEMENTS AND TEXT MESSAGES

In his second and third assignments of error, defendant challenges the admission into evidence of statements he made to officers, in which he admitted to masturbating while thinking about A, and text messages between him and A, in which defendant asked A if she had had sex with a boy and stated that he was "so jealous" and that he was "still very much attracted to you" but that was "part of me I want to hide. I HAVE TO HIDE." The trial court admitted that evidence, after concluding that it was relevant to defendant's sexual predisposition towards the A. On appeal, defendant acknowledges that, under Oregon law, evidence of a defendant's sexual predisposition towards a victim is non-propensity evidence but argues that the law is wrongly decided. *See, e.g., McKay*, 309 Or at 308 ("Simply stated, the proffered evidence here was admissible to demonstrate the

sexual predisposition this defendant had for this particular victim, that is, to show the sexual inclination of defendant towards the victim, not that he had a character trait or propensity to engage in sexual misconduct generally."); *State v. De Leon Say*, 319 Or App 271, 510 P3d 979, *rev den*, 370 Or 303 (2022) ("Although the Supreme Court clarified what propensity evidence is in *State v. Skillicorn*, 367 Or 464, 476, 479 P3d 254 (2021), the court did not expressly overrule its holding in *McKay* that sexual-predisposition evidence is not propensity evidence, and the reasoning in *Skillicorn* does not compel that conclusion."). We reject defendant's argument as controlled by the Supreme Court's opinion in *McKay*.

### III.   DENIAL OF MOTIONS FOR MISTRIAL

In his fourth and fifth assignments of error, defendant argues that the trial court abused its discretion when it denied two motions for a mistrial. The first motion for a mistrial came after the prosecutor inserted a disk with a file of an audio interview of defendant to play for the jury. The file name appeared briefly, in a four-square-inch box on the 75-inch video screen, and the word "polygraph," along with letters and numbers, appeared in the file name. The prosecutor immediately minimized the window and, outside of the jury's presence, advised the court of what had been momentarily displayed on the screen. Neither the court nor defense counsel had noticed the file name, and defense counsel said that he did not think that any of the jurors had seen it but believed that if the jury had been "looking for it, they could see it." The court observed that it doubted any juror had actually seen the display, noting that the font was "tiny," the court itself could not read it, and it "happened awful fast." The court nevertheless assumed that the jury had seen it. Defendant moved for a mistrial, which the court denied. At defendant's request, the prosecutor renamed the file and—in the jury's presence—withdrew the original exhibit and offered it under a different number that did not contain the "polygraph" reference.

Following that, a witness testified that he—the witness—was doing well on probation and had passed five polygraphs relating to his probation. Defendant objected that the witness's answer was nonresponsive and that the witness

was vouching for his own credibility. The court overruled the objection. Defendant later "renewed" his motion for a mistrial, arguing that the witness's testimony compounded the exposure of the "polygraph" file name. The trial court denied that motion, concluding that the witness's reference to his own polygraphs was not likely to invite the jury to think about the "potential sighting" of the polygraph file name, which occurred during a different witness's testimony about defendant's interview. However, the court struck the witness's testimony about his own polygraph performance.

We review the denial of a mistrial for abuse of discretion, *State v. Sprow*, 298 Or App 44, 45, 445 P3d 351 (2019), and affirm. The trial court concluded that the brief projection onto a large screen of a small box that contained the word "polygraph" was unlikely to cause any jurors who saw it to assume anything about a polygraph, especially in light of the lack of any testimony on that point. And the trial court correctly reasoned that the witness's testimony about his own polygraphs—which he expressly described as "polygraphs that go along with my probation"—was unlikely to cause the jurors to wonder whether defendant had submitted to a polygraph. Moreover, the trial court instructed the jury not to consider the witness's testimony about polygraphs and was entitled to presume that the jurors would be capable of following that instruction. *State v. Terry*, 333 Or 163, 177, 37 P3d 157 (2001) ("Jurors are assumed to have followed their instructions, absent an overwhelming probability that they would be unable to do so." (Internal quotation marks omitted.)). The court thus did not abuse its discretion in denying the mistrial motions.

Reversed and remanded for entry of a judgment that omits terms related to defendant's conditions of incarceration; otherwise affirmed.